## Norfolk

RAYMOND L. GOTTLIEB

v.

RHONA PECK GOTTLIEB

No. 0291-93-1

Decided September 27, 1994

COUNSEL

Morris H. Fine (Fine, Fine, Legum & Fine, on briefs), for appellant.

Peter W. Smith, IV (Robert C. Stackhouse; Stackhouse, Rowe & Smith, on brief), for appellee.

OPINION

**FITZPATRICK, J.**—In this domestic appeal, Raymond L. Gottlieb (husband) assigns twenty-eight grounds of error to the trial court's rulings on the issues of divorce, spousal support, and equitable distribution. Many of husband's arguments are without merit. We address only those issues properly preserved for appeal and that have some factual basis in the record or present legitimate questions of law. We summarily affirm all other assignments of error. For the reasons set forth below, we affirm the judgment of the trial court.

## BACKGROUND

This is a contested divorce case involving issues of fault, spousal support, equitable distribution, transmutation of assets, and attorney's fees. The parties separated on February 12, 1987, after twenty-four years of marriage, when wife moved out of the marital home. Wife left the marital home on the recommendation of her psychologist, because conditions in the marriage became intolerable, causing her physical and emotional pain. Her several attempts to correct the situation failed. Wife filed for divorce based on constructive desertion and cruelty. Husband's demurrer to wife's bill of complaint was sustained. Thereafter, husband filed for divorce on the ground of desertion, and wife filed a cross-claim seeking a no-fault divorce based on a one-year separation. The trial court found that wife was without legal fault in leaving the marriage, dismissed husband's complaint for desertion, and awarded wife a divorce on no-fault grounds.

During the marriage, husband was the primary income earner, and wife was the homemaker and child care provider for their two children. Husband has a law degree and is a successful investor and businessman. Wife has a master's degree in social work; however, she worked outside the home only during the first four years of the marriage. Most of the increase in the parties' assets during the marriage was derived from investments controlled by husband or from various closely held business entities owned primarily by husband. The evidence proved that although husband controlled the operations of these businesses, wife made some monetary and significant non-monetary contributions to the overall success of these businesses.

### *RES JUDICATA*

On February 13, 1987, wife filed a bill of complaint for divorce alleging constructive desertion by husband. Husband demurred, and the trial court sustained the demurrer with leave granted to wife to amend her complaint. On April 21, 1987, wife filed an amended bill of complaint for divorce on the grounds of cruelty and constructive desertion by husband. Again, husband demurred, and by order dated August 27, 1987, the trial court sustained husband's demurrer to the amended bill of complaint, but granted wife further leave to amend the complaint within twenty-one days. Wife failed to amend, and the order dismissing her amended bill

of complaint became final.[1]

On June 2, 1988, husband filed a bill of complaint for divorce in a separate case, alleging willful desertion by wife. Wife filed an answer and cross-bill seeking a no-fault divorce on the ground of a one-year separation. Husband then filed a special plea of *res judicata* and motion for summary judgment, which was denied. Husband argues that the trial court's order sustaining husband's demurrer in the original divorce suit barred, under the doctrine of *res judicata*, wife's defense that she was free from fault in leaving the marital home. As such, husband contends that he was entitled to summary judgment on his bill of complaint for divorce. We disagree.

On appeal, we view the evidence in the light most favorable to the prevailing party below. *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222-23, 372 S.E.2d 411, 415 (1988). *Res judicata* precludes the re-litigation of a claim or issue once a final determination on the merits has been reached by a court having proper jurisdiction over the matter. *See Commonwealth ex rel. Gray v. Johnson*, 7 Va. App. 614, 617-18, 376 S.E.2d 787, 788 (1989). "A person seeking to assert *res judicata* as a defense must establish: (1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the persons for or against whom the claim is made." *Id.* at 618, 376 S.E.2d at 789. Here, husband could not establish all the elements of the *res judicata* defense.

In her April 1987 amended bill of complaint, wife sought dissolution of the parties' marriage on fault grounds and prayed that she be granted a divorce. The issue in that case was whether *husband's conduct* was sufficient to constitute a fault ground of divorce. In the subsequent divorce suit filed by husband, the issue was whether *wife's conduct* constituted desertion. Each party's case attempted to prosecute different causes of action. The mere fact that wife could not maintain a suit for divorce against husband on the grounds of cruelty and constructive desertion does not automatically render her conduct in leaving the marital home an

---

[1] Wife initially noted her appeal to the trial court's August 27, 1987 order sustaining husband's demurrer and dismissing her amended bill of complaint. Thereafter, at wife's request and by order of this Court dated February 19, 1988, wife's appeal was withdrawn. *See* Record No. 1228-87-1.

adequate ground of divorce. A spouse may be legally justified in leaving the marital home "where the conduct of the other spouse has caused conditions in the marital home to be intolerable," *Kerr v. Kerr*, 6 Va. App. 620, 623, 371 S.E.2d 30, 32 (1988), or where the departing spouse "reasonably believes that his or her health is endangered by remaining in the household and he or she has unsuccessfully tried less dramatic measures to eliminate the danger." *D'Auria v. D'Auria*, 1 Va. App. 455, 459, 340 S.E.2d 164, 166 (1986). The order sustaining husband's demurrer to wife's amended bill of complaint established that, under the facts alleged, husband did not constructively desert his wife. However, that ruling did not operate, under the doctrine of *res judicata*, as a complete bar to wife's defenses against husband's bill of complaint.

## SUMMARY JUDGMENT

Husband also appeals the trial court's denial of his motion for summary judgment. Husband argued to the trial court that wife's defenses were barred by the doctrine of *res judicata*, and therefore, he was entitled to summary judgment on his bill of complaint for divorce pursuant to Rule 3:18 of the Rules of the Supreme Court of Virginia. As noted above, husband's *res judicata* argument must fail. In addition, the Supreme Court of Virginia has explained that "[s]ummary judgment is a drastic remedy which is available only where there is no material fact genuinely in dispute. . . . It applies only to cases in which no trial is necessary because no evidence could affect the result." *Shevel's, Inc. - Chesterfield v. Southeastern Assocs., Inc.*, 228 Va. 175, 181, 320 S.E.2d 339, 342-43 (1984). The extensive record in this case belies any argument that material issues of fact were not in dispute as to fault grounds for divorce or support. Moreover, Rule 3:18 applies only to actions at law. *See* Rule 3:1. Rule 2:21, which extended the remedy of summary judgment to equity cases, does not apply to "a suit for divorce or for the annulment of marriage." Rule 2:21. Therefore, husband's appeal of this issue, which has no basis in fact or law, is without merit.

## GROUNDS FOR DIVORCE

Husband argues that the trial court erred in granting wife a no-fault divorce, and that he was entitled to a divorce on the ground of wife's desertion. " 'Desertion is a breach of matrimonial

duty, and is composed first, of the actual breaking off of the marital cohabitation, and secondly, an intent to desert in the mind of the offender. Both must combine to make the desertion complete.'" *Zinkhan v. Zinkhan*, 2 Va. App. 200, 205, 342 S.E.2d 658, 660 (1986) (quoting *Nash v. Nash*, 200 Va. 890, 893, 108 S.E.2d 350, 352 (1959)). At the *ore tenus* hearing of December 8, 1992, the trial court made findings of fact as to factors leading to the dissolution of the marriage, including a specific finding that wife's testimony was more credible than husband's. After reviewing the evidence as to fault, the trial court concluded:

> In the light of the testimony of Mrs. Gottlieb and Dr. Powell, there was substantial, credible evidence Mrs. Gottlieb could reasonably believe that her physical and mental health were endangered by remaining in [the marital] household. Furthermore, the record indicates that Mrs. Gottlieb attempted to take reasonable measures to correct or make better the marital relationship short of termination . . . . [T]herefore, it appears in the record that Mrs. Gottlieb was without legal fault in terminating cohabitation.

The trial court dismissed husband's bill of complaint and awarded wife a no-fault divorce based on a one-year separation. Code § 20-91(9).

On appellate review, a divorce decree is presumed correct and will not be overturned if supported by substantial, competent, and credible evidence. *See Capps v. Capps*, 216 Va. 382, 384, 219 S.E.2d 898, 899 (1975). Wife's evidence proved that she left the marital home because she reasonably believed her health was endangered by remaining, and she unsuccessfully tried less drastic measures to eliminate the danger. Accordingly, the trial court could properly find she was without legal fault. *See D'Auria*, 1 Va. App. at 459, 340 S.E.2d at 166; *Breschel v. Breschel*, 221 Va. 208, 212, 269 S.E.2d 363, 366 (1980).

The evidence presented by the parties was in conflict. The trial court made a specific finding that wife's testimony was more credible than husband's. We cannot say that the trial judge erred in so doing. "The credibility of witnesses was crucial to the determination of the facts, and the findings of the trial court based upon the judge's evaluation of the testimony of witnesses heard *ore tenus* are entitled to great weight." *Shortridge v. Deel*, 224

Va. 589, 592, 299 S.E.2d 500, 502 (1983). Upon review of the record, we find ample credible evidence to support the trial court's decision to dismiss husband's bill of complaint and to award wife a no-fault divorce.

## SPOUSAL SUPPORT

Husband argues that the trial court abused its discretion in awarding wife $2,000 per month spousal support. Husband contends that wife is voluntarily unemployed and that the trial court failed to consider the $600,000 equitable distribution awarded to wife in the final decree of divorce.

■ "The determination whether a spouse is entitled to support, and[,] if so[,] how much, is a matter within the discretion of the [trial] court and will not be disturbed on appeal unless it is clear that some injustice has been done." *Dukelow v. Dukelow*, 2 Va. App. 21, 27, 341 S.E.2d 208, 211 (1986). "The judgment of the trial court is presumed correct and we may not disturb its ruling if there is credible evidence to support it." *Steinberg v. Steinberg*, 11 Va. App. 323, 329, 398 S.E.2d 507, 510 (1990). However, the trial court's discretion must not be exercised without reference to Code § 20-107.1. "[T]he statute commands that, in order to exercise its discretion, '[t]he court shall . . . consider' the specific factors contained therein. Failure to do so is reversible error." *Bristow v. Bristow*, 221 Va. 1, 3, 267 S.E.2d 89, 90 (1980).

■ Among the factors that the trial court must consider are "the standard of living of the family established during the marriage, the earning capacity, the education and training of the parties and the ability and opportunity of the parties to secure such education and training." *Cochran v. Cochran*, 14 Va. App. 827, 830, 419 S.E.2d 419, 421 (1992).

> In fixing the amount of alimony, the court must look to the financial needs of the wife, her age, physical condition and her ability to earn, and balance against these circumstances the financial ability of the husband to pay, considering his income and ability to earn. The amount awarded must, in any event, be fair and just under all the circumstances of the case.

*Klotz v. Klotz*, 203 Va. 677, 680, 127 S.E.2d 104, 106 (1962).

It is apparent from the transcript of the proceedings that the trial court considered all the statutory requirements of Code § 20-107.1. The evidence proved that wife's earning capacity, if any, was significantly diminished by her physical and mental condition, age, and extended absence from the work force. The trial court found that "it would probably be very difficult to start [a social work] career at her age at this point in her life." In addition, wife's support needs were approximately $4,000 per month, and husband's continued ability to pay was established. The wife's receipt of a lump sum award of $600,000, although considered by the court, is not dispositive of her request for spousal support. The lump sum award was a marital asset to which wife was entitled as a matter of law without regard to need or earning capacity. Because we find that the award appears fair and just under the circumstances of this case, we cannot say that the trial court abused its discretion in awarding wife $2,000 per month in support. Accordingly, we affirm the trial court on this issue.

## ATTORNEY'S FEES

Wife requested an award for attorney's fees in the amount of $142,936. At trial, husband objected to this request on the following basis:

> Your Honor, I would suggest to the Court that we're getting ready to make Mrs. Gottlieb a rich woman and as such in this day and time in modern society and being a rich woman that she should pay her own attorney's fees out of the award.

The trial court awarded wife partial attorney's fees in the amount of $90,000. On appeal, husband argues that the trial court abused its discretion because the award provides for the payment of fees generated by more than one attorney representing wife at the same time. In addition, husband argues that "there was no testimony as to reasonableness, time spent or why it was necessary to have eight to ten attorneys working simultaneously" on wife's case.

It appears that these arguments were not made to the trial court. There is no reference in the briefs to the pages of the transcript or appendix where these arguments were presented or where the award of attorney's fees was objected to on this basis. *See* Rule 5A:20(d). "We will not search the record for errors in order

to interpret the [husband's] contention and correct deficiencies in a brief." *Buchanan v. Buchanan*, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992); *Hurt v. Hurt*, 16 Va. App. 792, 801 n.7, 433 S.E.2d 493, 499 n.7 (1993). Inasmuch as it appears that the argument made before this Court was never made in the trial court, we decline to consider the issue for the first time on appeal. *See Jacques v. Commonwealth*, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (citing Rule 5A:18); *Zipf v. Zipf*, 8 Va. App. 387, 392, 382 S.E.2d 263, 265 (1989). Accordingly, Rule 5A:18 bars our consideration of this question on appeal. Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

## VALUATION DATE

Prior to trial, husband moved that the trial court set the valuation date of assets subject to equitable distribution as of the date of separation. No evidence was presented in support of his motion. However, husband claimed that because of the four year delay between the date of separation and the trial date "there could be material changes of conditions that the law would not contemplate."[2] The trial court denied the motion, except as to the valuation of husband's pension plans as required by Code § 20-107.3(G). In addition, the court held that the valuation dates for the various interests in corporations and business entities controlled by the parties were to be set as of the date of the most recent federal income tax return for such entities. For all other assets, the valuation date was held to be the date of the evidentiary hearing.

"Ordinarily, when making an equitable distribution award under Code § 20-107.3(A), a court determines the value of marital property 'as of the date of the evidentiary hearing on the evaluation issue.'"[3] *Smith v. Smith*, 18 Va. App. 427, 430, 444 S.E.2d 269, 272 (1994). Former Code § 20-107.3(A), as it read

---

[2] Several of husband's questions presented and/or assignments of error involve the trial court's determination of the valuation date. As such, our holding on this issue is dispositive of several issues and sub-issues appealed by husband.

[3] Husband's bill of complaint and wife's cross-bill were both filed prior to the July 1, 1988 effective date of the amendments to Code § 20-107.3. Accordingly, the law existing at the time this suit was filed governs the case. *See Price v. Price*, 4 Va. App. 224, 230, 355 S.E.2d 905, 908 (1987); *Gaynor v. Hird*, 11 Va. App. 588, 591, 400 S.E.2d 788, 789-90 (1991).

in 1987, did not specify a presumptive date for the valuation of marital assets. However, "[w]e have stressed that the trial judge in evaluating marital property should select a valuation 'that will provide the court with the most current and accurate information available which avoids inequitable results.'" *Gaynor v. Hird*, 11 Va. App. 588, 593, 400 S.E.2d 788, 790-91 (1991) (quoting *Mitchell v. Mitchell*, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987)). The record establishes that the trial court considered all the evidence as to the value of the marital assets and considered the total value in his equitable distribution award. Each valuation date selected was supported by evidence which the trial court found as the most accurate information available as to value. The burden was on the parties to provide the trial court with sufficient evidence as to the most appropriate valuation date, *Bosserman v. Bosserman*, 9 Va. App. 1, 5, 384 S.E.2d 104, 107 (1989), and on several occasions the trial court inquired whether there were any additional issues or evidence that the parties wanted to present. We find that the trial court, upon conflicting evidence and in the proper exercise of its discretion, determined that the dates selected represented the most current and accurate information available which would avoid inequitable results.

## PENSION ASSETS

Husband argues that the trial court's valuation of his interest in his retirement pension is erroneous, and that the court should have used the plan's valuation date of July 31, 1986, instead of the parties' date of separation. In addition, husband contends that his "Deferred Compensation Plan" was not subject to equitable distribution pursuant to Code § 20-107.2 (1987). We disagree with both of these arguments.

Code § 20-107.3(E)(8), as it read in 1987, required the trial court to determine the "present value" of the pension or retirement benefits as of the date of separation. This is purely a matter of state law, and it is irrelevant that the terms of the plan specify a different valuation date. We find husband's reliance on *King v. Forst*, 239 Va. 557, 391 S.E.2d 60 (1990), a case involving the classification of the District of Columbia's unincorporated business tax, misplaced. Further, the record shows that the parties agreed that the Code of Virginia required use of the date of separation as the valuation date for the plan. After the parties agreed to this date, the following colloquy transpired:

THE COURT: I would think that the law — the law says I have to evaluate the assets as of the date of separation.

WIFE'S COUNSEL: That's right, Your Honor.

THE COURT: Then we'll just do the best we can with it.

The record shows that husband did not object to the court's decision to use the date of separation as the valuation date, and the additional evidence presented as to valuation was designed to establish the value of the plan as of the date of separation.

Husband was the major beneficiary of the Gottlieb and Gottlieb Limited Employee Trust, a defined contribution retirement plan. The trial court valued the plan at $1,937,585 and gave wife a share of approximately thirty-three percent or approximately $641,000, to be paid to wife in installments when husband receives benefits under the plan. The interest in the retirement plan was clearly marital property. Husband disputes the trial court's valuation of this asset on the basis that wife's witness, a certified public accountant, relied upon inadmissible hearsay. Wife valued this asset at $1,946,455, and husband's witnesses valued it at $1,272,762. The material dispute regarding the value of the trust centers on the corresponding value of several of the assets held by the trust, including a large block of shares of the Bank of the Commonwealth stock and some GMAC zero coupon bonds.

Wife relied on the appraisal of the Bank of the Commonwealth stock by Mr. Woodward, the president of the bank, and Mr. Duvall, a certified public accountant. The parties agreed to use the date of separation for the valuation of this asset. The evidence shows that the stock traded between approximately $15 and $20 per share on the date of separation.[4] Further, evidence was submitted as to the stock's appraised value in a November 1988 shareholder dissenters suit filed by husband, where the Circuit

---

[4] Husband contends that the trial court erred in allowing Mr. Duvall, a licensed certified public accountant, to testify as to the value of certain pension assets because he relied upon hearsay evidence. We disagree. After Mr. Duvall was sworn as a witness and his qualifications were presented to the court, husband's counsel conducted a limited voir dire. The trial court then held:

All right. I'll find that Mr. Duvall is an expert. He's a licensed CPA and I'll let you question him as an expert.

Court for the City of Norfolk affirmed an appraisal of twenty dollars and four cents per share for this stock. Husband argues that the shares were only worth eight dollars per share on the date of separation and that there was really no market for such a large block of stock.

As to the GMAC zero coupon bonds, wife argued that these bonds were worth $654,750. The trust valued them at $396,000.

> We recognize that where pension benefits are a portion of the pool of marital assets to which all of the provisions of Code § 20-107.3 must be applied, the continuing struggle has been to determine the value of these benefits and to equitably distribute that value without requiring payment before the benefits are received by the payor spouse.

*Gamble v. Gamble*, 14 Va. App. 558, 569, 421 S.E.2d 635, 642 (1992).

Upon conflicting evidence involving testimony from the parties and their experts, we cannot say that the trial court erred in its valuation of the trust.

Husband also had an interest in a deferred compensation plan from the Bank of the Commonwealth because of his position on the board of directors of the bank. The trial court found the value of this plan was $27,382.10, and awarded wife approximately thirty-three percent or $9,000 of this plan to be paid when husband receives benefits under the plan. Husband argues that this asset was not subject to equitable distribution because Code § 20-107.3 did not specifically provide for the distribution of deferred compensation plans until the July 1, 1988 amendment, after the date this case was filed.

We reject husband's contention that his deferred compensation plan was not subject to equitable distribution. Husband acquired the interest in this deferred compensation plan by virtue of his services rendered to the board during the marriage. Code § 20-107.3(A)(2) (1987), in effect when this case was filed, provided:

---

Code § 8.01-401.1 provides that the facts, circumstances, or data that Mr. Duvall relied upon in forming his opinion "need not be admissible in evidence." Accordingly, we find no error in the trial court's decision to consider this evidence.

2. Marital property is (i) all property titled in the names of both parties, whether as joint tenants, tenants by the entirety or otherwise, and (ii) all other property acquired by each party during the marriage which is not separate property as defined above. *All property acquired by either spouse during the marriage is presumed to be marital property* in the absence of satisfactory evidence that it is separate property.

(Emphasis added).

The statute expresses the clear legislative intent to include in the marital pool all property, income, and compensation earned during the marriage which is not proven to be separate property. Husband owed to the marriage the value of his services rendered to the Bank of the Commonwealth. In exchange for such services, he participated in a deferred compensation plan. We agree with the trial court that the value of his interest in that plan was clearly marital property and properly subject to equitable distribution. *See Robinette v. Robinette*, 10 Va. App. 480, 485, 393 S.E.2d 629, 632 (1990).

## CLASSIFICATION OF ANOHR CORPORATION STOCK

Husband argues that the trial court erred by piercing the corporate veil of ANOHR Corporation and holding that the assets of ANOHR Corporation were marital property. We disagree.

There is no evidence that the trial court "pierced the corporate veil" and subjected ANOHR Corporation or its non-party shareholders to liability for any equitable distribution award. On the contrary, the trial court found that husband's interest in ANOHR Corporation, which was initially husband's separate property, had been transmuted into marital property during the course of the marriage. The trial court held:

The Court is going to find and rule that [ANOHR] investments and all the subsidiaries, Gottlieb and Gottlieb Limited, Gottlieb and Gottlieb International, Limited, Diesel School Property Association, are all *transmuted* because of the labors of Mrs. Gottlieb, the whole life of this couple in these corporations to lesser [sic] their tax load and to build up investment and return for Mr. Gottlieb.

> I'm reading from Steinbeck, 11 Virginia Appeals 13 at page 24 where it says that: "A partner in the marriage [owes] his labor during the marriage to the marital partnership. The fruits of that labor absent express agreement are marital property that was, quote, their business.["] He was a consultant. She was his wife. She raised his children. She sat in corporate property. She drove in corporate property. She lived in corporate property. I mean, it's their whole life and existence. I'm going to find that it's all transmuted into one.

(Emphasis added). We find the trial court's decision amply supported by the law and the evidence.

Because this case was filed in 1988, the trial court was required to classify all the property held by the parties as either marital or separate property; it could not be classified as part marital or part separate. *Smoot v. Smoot*, 233 Va. 435, 440-41, 357 S.E.2d 728, 730-31 (1987); *Brown v. Brown*, 5 Va. App. 238, 243, 361 S.E.2d 364, 366-67 (1987).[5] Husband's separate property of ANOHR Corporation stock acquired before marriage could be transmuted into marital property if it was commingled with marital property, *Westbrook v. Westbrook*, 5 Va. App. 446, 454, 364 S.E.2d 523, 528 (1988); *Ellington v. Ellington*, 8 Va. App. 48, 53, 378 S.E.2d 626, 628 (1989), or if wife made monetary or nonmonetary contributions that enhanced the value of the stock. *Barnes v. Barnes*, 16 Va. App. 98, 104-05, 428 S.E.2d 294, 299 (1993); *Lambert v. Lambert*, 6 Va. App. 94, 101, 367 S.E.2d 184, 188 (1988).

> Furthermore, . . . even though the amount of marital property that is commingled with separate property may be insubstantial, if the non-owning spouse nevertheless makes significant monetary or nonmonetary contributions to the marital relationship, that contribution is sufficient to transmute what was separate business property into marital property where the owning spouse devotes his efforts throughout the marriage to working in the business.

*Barnes*, 16 Va. App. at 104-05, 428 S.E.2d at 299 (citing *Taylor v. Taylor*, 9 Va. App. 341, 345, 387 S.E.2d 797, 799 (1990)). *See also Lambert*, 6 Va. App. at 103, 367 S.E.2d at 190.

---

[5] Effective July 1, 1990, Code § 20-107.3 was amended to provide for an additional classification of property that is part marital and part separate.

The evidence proved that husband devoted the majority of his time and efforts during the marriage to the control and management of these various closely held corporations and business entities. It is undisputed that the value of these businesses increased dramatically during the marriage. The trial court found and the evidence proves that the increases in value were from the combined efforts of the parties, with husband providing the vast majority of the work required to make the businesses succeed.

Wife contributed to the overall increase in value of husband's interests by acting as corporate secretary, being a member of the board, traveling for the businesses, and assisting in social functions. In addition, wife made significant nonmonetary contributions to the marital relationship, and there was evidence presented from which the trial court could have found that wife made some, albeit insubstantial, monetary contributions to the business. Based on all this evidence, we cannot say that the trial court erred in classifying husband's interests in these closely held business entities as marital property.

On the related issue of valuation of these business entities, we find, viewing the evidence in the light most favorable to the wife as the prevailing party below, that the trial court's decision is supported by ample credible evidence. Wife's expert valued the stock of ANOHR Corporation at $2,699,272 as of June 1991. From this evidence, the trial court could extrapolate husband's interest in the corporation, which was over ninty-nine percent of the total outstanding shares of stock.

Husband also contends in various assignments of error that the trial court erred in accepting wife's evaluation of the Diesel School Property at $1,103,298. This figure was established, in part, by relying on evidence from a separate condemnation proceeding encompassing most of the property. The evidence shows that the purpose of the limited partnership holding title to this property was to develop 45.62 acres of land in the City of Richmond. The condemnation proceeding involved all but 16.67 acres of the tract. In the condemnation case, husband argued that the City's valuation was too low. Here, he argues that the City's valuation was too high.[6] Husband contends that the value of the prop-

---

[6] Husband argues that the trial court erred in admitting evidence as to the amount of funds deposited in the condemnation proceeding by the City of Richmond pursuant to

erty is the assessed tax value of $395,000. However, additional evidence proved that prior to the condemnation proceeding, there was a contingent contract for the sale of the property for more than $2,000,000. The determination of the actual value of the property for equitable distribution purposes was for the fact finder to decide. The trial court did not err in accepting wife's evidence over that of husband's as to the value of these properties. *See Clements v. Clements*, 10 Va. App. 580, 584, 397 S.E.2d 257, 259 (1990).

## BLANKET OBJECTIONS TO CLASSIFICATION AND DISTRIBUTION

Husband argues that the trial court failed to identify specifically and list every individual marital asset, its value, and any associated liabilities. Further, husband contends, *inter alia*, that the trial court failed to consider the factors set forth in Code § 20-107.3(E).

██ As a threshold matter, we note that husband did not object to the trial court's method or approach to totaling up the value of the marital property and fashioning an equitable award from that total. It is well established that in making an equitable distribution of property under the statute in effect at the time this case was filed, "[t]he court first must classify the property as either separate or marital. The court then must assign a value to the property based upon evidence presented by both parties. Finally, the court distributes the property to the parties, taking into consideration the factors presented in Code § 20-107.3(E)." *Marion v. Marion*, 11 Va. App. 659, 665, 401 S.E.2d 432, 436 (1991). "The division or transfer of marital property and the amount of any monetary award is a matter committed to the sound discretion of the trial court." *Zipf*, 8 Va. App. at 393 n.2, 382 S.E.2d at

---

Code § 25-46.3. Husband cites Code §§ 26-46.3 and 33.1-124 for the proposition that this evidence is never admissible in any proceeding. We disagree. These code sections do not limit the admissibility of evidence in an equitable distribution matter. Virginia's equitable distribution scheme authorizes a trial court to consider *all* admissible evidence that is probative of value of the parties' assets. We have consistently held that:

> The court may not refuse or fail to give parties a reasonable opportunity to develop and present evidence of value. Nor can the court arbitrarily reject credible evidence of value merely because other evidence might be more accurate, convincing, desirable or persuasive.

*Bowers v. Bowers*, 4 Va. App. 610, 618, 359 S.E.2d 546, 551 (1987).

266 n.2.

▮ In fashioning any equitable distribution award, the trial court must consider all the enumerated factors of Code § 20-107.3(E) in exercising its discretion, and "the Supreme Court and this Court have repeatedly held that it is reversible error for the trial [court] to fail" to do so. *Robinson v. Robinson*, 5 Va. App. 222, 227, 361 S.E.2d 356, 358-59 (1987) (citations omitted).

In *Alphin v. Alphin*, 15 Va. App. 395, 424 S.E.2d 572 (1992), we held:

> The appropriate consideration of the factors entails more than a mere recitation in the record or decree that all the statutory factors have been considered or reviewed. The enumerated factors are intended to guide the court's exercise of discretion, and substantive consideration of these factors should be incorporated into the decision-making process. "This does not mean that the trial court is required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." However, when a trial judge fails to articulate sufficiently the consideration he or she has given to the statutory criteria, "we must examine the record to determine if the award is supported by evidence relevant to those factors."

*Id.* at 405, 424 S.E.2d at 578 (citations omitted).

Although the trial court did not state with particularity the degree of consideration it accorded to each of the statutory factors, the court indicated that it had considered *all* the factors, and the evidence supports that conclusion. The extensive record in this case shows the trial judge questioning witnesses and entreating counsel to deal with each requirement of Code § 20-107.3. The trial court made a lump sum award and a division of pension rights, but the court failed to state on the record every item of property raised by the parties. The court added up each finding of value, and then specifically inquired of counsel whether there were any other assets or liabilities that the court needed to consider. Husband presented his tax argument to the court and discussed the liabilities of the parties and those liabilities associated with each property. After the court totaled up all the respective values and allowed for the associated liabilities, it determined the appro-

priate amount of the lump sum award.

We agree with husband that the trial court should have specified the properties and associated values for every marital asset. However, both parties failed to object to the procedure used, and the evidence shows that the trial court: (1) properly considered all the factors of Code § 20-107.3; (2) was intimately familiar with all the parties' assets and the respective values and liabilities for these assets; (3) valued each asset *seriatim*; (4) inquired whether there was anything further to be considered; and (5) made an award that was fair and equitable. Therefore, we cannot say that the trial court's lack of specificity in identifying the properties constituted reversible error.

 "The function of the [trial court] is to arrive at a fair and equitable monetary award based upon the equities and the rights and interests of each party in the marital property." *Mitchell v. Mitchell*, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987). Upon review of all the evidence, we find that the trial court fashioned a fair and equitable distribution of the marital assets. The record is replete with credible evidence that shows that the trial court thoroughly examined all the evidence and properly considered all the statutory factors in arriving at an appropriate award. Accordingly, we affirm.

## REMAINING ISSUES

With regard to husband's questions presented and various sub-issues not specifically addressed above, we hold that these issues are without merit and summarily affirm. All decisions on these issues were either within the sound discretion of the trial judge and the record shows no abuse of that discretion, or were not properly briefed or preserved for appeal.

## AWARD OF ATTORNEY'S FEES FOR THIS APPEAL

Wife has requested an additional sum of attorney's fees for matters relating to this appeal. Upon consideration of the entire record in this case, we hold that wife is entitled to a reasonable amount of attorney's fees incurred for representation in this appeal. Many of husband's questions presented or assignments of error were not supported by the law or the evidence. Accordingly, we remand this case to the trial court for the sole purpose of conducting an additional hearing and making a determination as to

the additional amount of attorney's fees wife should be awarded.

## CONCLUSION

For the reasons set forth above, we affirm the judgment of the trial court. We remand the case, however, for the limited purpose of determining the amount wife should be awarded for attorney's fees she incurred with this appeal.

*Affirmed in part and remanded.*

Moon, C.J., and Coleman, J., concurred.