COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judge Annunziata and
          Senior Judge Coleman
Argued at Richmond, Virginia


FRANK EDWARD BIVIANO

                                        MEMORANDUM OPINION[*] BY
v.    Record No. 1882-01-2              JUDGE ROSEMARIE ANNUNZIATA
                                             MARCH 12, 2002

FAITH V. KENNY, F/K/A
 FAITH V. BIVIANO


              FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
                          James A. Luke, Judge

              Robert B. Hill (Hill, Rainey & Eliades, on
              briefs), for appellant.

              Lawrence D. Diehl for appellee.


     The trial court entered an equitable distribution order in

this divorce matter on March 20, 2001.  On appeal, Frank Edward

Biviano challenges the trial court's decision to: (1) overrule his

exceptions to the commissioner's report; (2) deny his motion to

re-value the North Carolina property; and (3) reverse the

commissioner's finding that three trailers were marital property.

In addition, Faith V. Kenny requests appellate attorney's fees.

For the reasons that follow, we affirm in part, reverse in part,

and award Kenny appellate attorney's fees.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## Background

Biviano and Kenny were married on November 8, 1989, separated on May 1, 1996, and divorced by a final decree entered on June 19, 1998. The trial court referred all equitable distribution matters between the parties to a commissioner in chancery.

Biviano filed exceptions to the commissioner's report, contending that the commissioner erred by: (1) classifying Kenny's two IRA accounts as separate property; (2) classifying trailers 6259 and 6260 as separate property; (3) declining to account for Biviano's separate interest in the parties' North Carolina lake house; (4) determining that Biviano had possession of $38,429 in proceeds from the parties' stock; (5) awarding Biviano only $7,350 of the $36,750 in funds that Kenny had misappropriated during the parties' separation; and (6) giving his debts little consideration. The trial court overruled each of these exceptions. The court also denied Biviano's motion to re-open the hearing in order to re-value the North Carolina lake house.

Kenny filed an exception to the commissioner's finding that trailers 6212, 6231 and 6261 were marital. The trial court reversed that finding and accordingly deducted $33,500 from the total value of marital assets.

-

## II.

### Facts and Analysis

It is well settled that a trial court's "decision regarding equitable distribution . . . will not be reversed unless it is plainly wrong or without evidence to support it." Gilman v. Gilman, 32 Va. App. 104, 115, 526 S.E.2d 763, 768 (2000) (internal citations and quotations omitted). In reviewing such awards, "we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Id. Because a commissioner in chancery faces similar responsibilities, when his or her findings are based upon ore tenus evidence, the commissioner's report is presumed correct. See Brown v. Brown, 11 Va. App. 231, 236, 397 S.E.2d 545, 548 (1990) (noting that the commissioner has the "authority to resolve conflicts in the evidence and to make factual findings"). Consequently, "the trial judge ordinarily must sustain the commissioner's report unless the trial judge concludes that it is not supported by the evidence." Id. (citing Morris v. United Virginia Bank, 237 Va. 331, 337-38, 377 S.E.2d 611, 614-15 (1989)). An appellate court, therefore, should sustain the commissioner's report, "unless it plainly appears, upon a fair and full review, that the weight of the evidence is contrary to his findings."

-

Thrasher v. Thrasher, 202 Va. 594, 604, 118 S.E.2d 820, 826 (1961) (internal quotation omitted).

In applying these principles of law to the factual issues in this appeal, we note the commissioner did not place great weight on Biviano's testimony because he found that Biviano "engaged in a course of conduct involving dishonesty, fraud, and misrepresentation . . . ." Specifically, the commissioner noted that Biviano

> misrepresented himself to the Wife and her family, as, among other things, a Vietnam veteran jet pilot, a Certified Financial Planner, the owner of substantial assets, and a man who had been married only twice in the past . . . forged his Wife's signature on a Power of Attorney, and used the altered document without her knowledge or consent[,] . . . stole money from friends of the Wife and attempted to obtain a credit card in her name without her knowledge . . . .

### A. Classification of Kenny's IRA accounts

#### Relevant Facts

Kenny owned three IRA accounts totaling $48,000, which were funded completely during the marriage. Kenny and her parents, Willard and Ethel Vejnar, testified that the checks which funded Kenny's IRAs were written from an account owned by "Oak Shades Mobile Home Park," and were gifts from her parents. The checks were deposited into the parties' joint account. Immediately thereafter, funds from the joint account were used to purchase IRAs equaling the exact amounts of the gift checks. No other source for the purchase of the IRA accounts was proved.

-

The commissioner found that the funds used to purchase these IRA accounts were gifts from a third party and that the accounts were Kenny's separate property. Biviano filed an exception to that finding, which the trial court overruled.

## Analysis

Biviano contends that the IRA accounts were marital property because the funds were not gifts from Kenny's parents, claiming that the evidence showed that Kenny was the proprietor of Oak Shades Mobile Home Park. We disagree.

Biviano bases his claim on evidence that Kenny's tax returns for 1989, 1990, and 1991 listed her as the proprietor of the mobile home park and on her accountant's testimony that he understood that to be her position. The commissioner found, however, that the "[t]ax returns designating the Wife as the owner of the property were clearly in error." The evidence supports this finding. Alan Ross Connelly, the accountant who prepared the Bivianos' tax returns for 1990 and 1991, testified that Kenny was the manager, and not the owner, of the mobile home park.[1] In addition, Kenny and her parents testified that her parents owned the mobile home park and Kenny did not. The record thus contains sufficient evidence that Kenny's parents owned the business and

---

[1] Biviano mischaracterizes a statement by Connelly, one of Kenny's accountants. While Connelly agreed that he completed the tax returns in a manner consistent with his understanding of Kenny's status at the park, on redirect, he clarified that "in no way was any ownership of anything transferred to [Kenny]."

-

that the funds from the mobile home park were deposited in Kenny's IRA accounts as third party gifts. Accordingly, we affirm the trial court's decision to classify the IRAs as Kenny's separate property. Code § 20-107.3(A)(1)(ii); see Holden v. Holden, 31 Va. App. 24, 520 S.E.2d 842 (1999) (reversing court's classification of real estate as marital where the evidence showed husband's income from his separate comic book sales had been deposited into the parties' joint account and used as a down payment on the land).

### B. Classification of Trailers 6259 and 6260

The commissioner recommended that these trailers be classified as Kenny's separate property. Biviano excepted to that finding on the ground that his personal efforts and marital monetary contributions transmuted the property into marital property. The trial court overruled this exception and classified the property as separate. We find that the evidence supports the trial court's classification.

Kenny owned these trailers prior to the marriage. Therefore, they are presumed to be separate property. To overcome that presumption, Biviano must demonstrate that the trailers increased in value due to his personal efforts or to marital monetary contributions. See Code § 20-107.3(A)(3)(a); Martin v. Martin, 27 Va. App. 745, 751, 501 S.E.2d 450, 453 (1998). "For personal labor contributed to property to be 'significant' and to cause or result in a substantial increase in

-

value, without proof to the contrary, the personal labor must amount to more than customary care, maintenance, and upkeep." Id. at 757, 501 S.E.2d at 456.

Although Biviano managed these trailers and made repairs to them, spending more than $16,000 of marital funds to keep them "rentable," there was no evidence of a substantial increase in value of the trailers. Accordingly, the commissioner properly found that "there were no significant improvements or monetary or non-monetary contributions" to transmute the trailers into marital property, and, at most, "[Biviano] did repairs and maintenance, not capital improvements, and the same were not sufficient to change the character of the assets," and we affirm its decision.

### C. Classification of North Carolina Lake House

Biviano contends that the trial court erred in overruling his exception to the commissioner's finding that he did not have a separate property interest in the North Carolina lake house because he made thirty-three mortgage payments during the parties' separation. Because the trial court affirmed the commissioner's finding that the equity in the lake house was entirely marital, we will sustain that finding if there is evidence in the record to support it. See Gilman, 32 Va. App. at 115, 526 S.E.2d at 768. We find that there is.

Code § 20-107.3(A)(3)(d) provides, in pertinent part, that where separate property is contributed to marital property, "to the extent that the [separate] property is retraceable by a

preponderance of the evidence and was not a gift, the [separate] property shall retain its original classification."  The party contending that a portion of marital property should be classified as separate bears the burden of proof.  See Barker v. Barker, 27 Va. App. 519, 500 S.E.2d 240 (1998); von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997). "Whether a transmuted asset can be traced back to a separate property interest is determined by the circumstances of each case, including the value and identity of the separate interest."  See id.

In this case, Biviano presented certain personal records and his own testimony that he reduced the principal on the lake house mortgage during the parties' separation.  However, the commissioner and the trial court did not credit this evidence, see Brown, 11 Va. App. at 236, 397 S.E.2d at 548, and there is no other evidence in the record to support his contention that he made these post-separation payments.  Furthermore, Biviano's proof did not establish the source of the funds used to make the mortgage payments.  Accordingly, he has failed in his burden of proving retraceablity, and we must affirm the trial court's determination that he does not have a separate property interest in the lake house.  See von Raab, 26 Va. App. at 248, 494 S.E.2d at 160.

-

## D.  Possession of Proceeds From Marital Stock

The commissioner found that Biviano possessed the proceeds from the sale of the parties' P&G and Texaco stock, Biviano excepted to that finding, and the trial court overruled the exception.  Because the evidence supports the trial court's decision, we affirm it.

Biviano liquidated the Texaco stock on March 22, 1996, and the P&G stock on March 27, 1996.  The funds totaled $28,429.96.  Kenny testified that she never received any portion of these funds.  Biviano claims that these funds were deposited into an account with James River Bank, controlled by both Biviano and Kenny, on April 4, 1996 and that Kenny then deposited those funds into her separate account.  Indeed, Kenny wrote a check to her separate Benham Group account for $25,429 from the James River account.  However, she testified, and Biviano did not contest, that these funds represented Biviano's reimbursement to her for the sales proceeds from her Arabian horses.  In addition, Kenny's counsel wrote to Biviano's counsel requesting that "$23,000 be returned to [Kenny] which is her separate assets resulting from the sale of her premarital horses."  Biviano's counsel responded that same day, agreeing to "waive argument" on the issue, i.e. "she can keep [it]."  Because this correspondence and Kenny's testimony support the commissioner's finding that Biviano possessed the proceeds from the sale of the stock, we will not disturb that finding.  See Brown, 11 Va. App. at 236, 397 S.E.2d

-

at 548; <u>see</u> <u>also</u> <u>Amburn v. Amburn</u>, 13 Va. App. 661, 666, 414 S.E.2d 847, 850 (1992) (holding that party with dominion and control over proceeds at the time of the parties' separation has the burden of accounting for their use).

### E. Compensation for Kenny's Overcharge in Trailer Accountings

#### Relevant Facts

The parties owned nine trailers that were situated in the trailer park owned by Kenny's parents. Upon separation, Kenny managed the trailers and paid Biviano half the proceeds, as evidenced by Kenny's accounting of trailer profits to Biviano. In these accountings, Kenny represented that the business paid $170 lot rent per trailer per month and noted a $300 per month management fee. Kenny actually paid her parents only $120 lot rent per month. The commissioner found that Kenny overcharged Biviano for lot rent and that a management fee for a marital asset was inappropriate. Because Kenny based her payments to Biviano on these figures, he concluded that Kenny owed Biviano a portion of the overcharged amount.

The commissioner then considered that he had divided the trailers sixty-six percent to Kenny and thirty-four percent to Biviano and that Kenny had contributed one hundred percent to the management and maintenance of the trailers since separation, and concluded that Biviano was due a twenty percent refund for the overcharged amounts.

-

Analysis

Biviano contends that the parties agreed to split the profits from the trailers equally and that by awarding Biviano only twenty percent of what he terms "misappropriated" funds, the commissioner improperly ignored the parties' agreement to divide the profits equally.[2] See Richardson v. Richardson, 10 Va. App. 391, 392 S.E.2d 688 (1990).

First, we note that the commissioner did not find, as Biviano suggests, that Kenny "misappropriated" any funds but that she improperly assessed lot rental charges and management fees in her accounting statements. Second, we hold that sufficient evidence supported the trial court's conclusion that there was no agreement between the parties to equally divide the proceeds from the trailers during separation.

The evidence demonstrated only that Kenny paid Biviano half of the proceeds during their separation[3]; Kenny's accounting statements do not prove that Biviano and Kenny had agreed to "settle property . . . claims." See Richardson, 10 Va. App. at

---

[2] In his brief, Biviano raises other issues that he did not preserve, present as questions on appeal, or support with legal argument. Accordingly, we will not consider them here. Rule 5A:18; Rule 5A:20; Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

[3] Biviano also contends that an affidavit by J. Larry Palmer, his former attorney, proves that the parties had agreed to divide the profits equally. However, we cannot consider Palmer's affidavit as evidence, as it was not part of the record before the trial court. See Russell County School Bd. v. Anderson, 238 Va. 372, 385, 384 S.E.2d 598, 605 (1989).

-

395, 392 S.E.2d at 690 (noting that agreements between spouses "to settle property or support claims are contracts," to which the general contract rules apply). Because the evidence did not prove that the parties had contracted to divide the profits equally, or in any other manner, the trial court properly considered the relative contributions of the parties to the property and the division of the property upon divorce in determining Biviano was entitled to twenty percent of the overcharged funds. See Gilman, 32 Va. App. at 115, 526 S.E.2d at 768.

### F.  Finding Debts Not Significant Factor

Biviano contends that the trial court erred by failing to give effect to his assumption of a substantial unsecured marital debt. See Trivett v. Trivett, 7 Va. App. 148, 371 S.E.2d 560 (1988). He claims that he incurred more than $35,000 in debt during the last two months of the marriage in order to purchase a marital truck, marital furniture, and to pay other marital debts.

Biviano, however, failed to present any evidence establishing the amount of any debt or substantiating his claim that the debts he incurred during the marriage were marital. See Bowers v. Bowers, 4 Va. App. 610, 359 S.E.2d 546 (1987) (noting that litigants have the burden to present evidence sufficient for the court to discharge its duty to equitably distribute property under Code § 20-107.3). Furthermore, the commissioner properly declined to credit Biviano's testimony on this issue. See Brown, 11 Va. App. at 236, 397 S.E.2d at 548. Therefore, the commissioner

-

considered the debts of the parties and properly concluded that marital debt was not a significant factor.  See Marion v. Marion, 11 Va. App. 659, 664, 401 S.E.2d 432, 436 (1991) (holding that all the factors enumerated in Code § 20-107.3(E) must be considered in distributing marital property, but each factor need not be weighed equally).

### G.  Classification of Trailers 6212, 6231 and 6261

The commissioner recommended that these three trailers be classified as marital.  The trial court reversed that recommendation, finding that Kenny used funds secured by her horse farm, which was her separate real estate, to purchase trailers 6212, 6231 and 6261.  Biviano contends that the trailers are marital property because Kenny paid the mortgage on the farmhouse with marital funds.  We agree.

The evidence proved that the three trailers were purchased with marital funds.  Kenny herself testified that she paid the mortgage on the farm with her salary during the marriage.  She deposited the proceeds from the farm loan in a Dreyfus savings account, transferred the funds to the parties' joint checking account, and used these same funds to purchase the three trailers. Therefore, Kenny did not maintain the trailers as separate during the marriage, and Biviano has met his burden of proving that the three trailers were marital property.  See Taylor v. Taylor, 9 Va. App. 341, 344-45, 387 S.E.2d 797, 799 (1990) (classifying property as marital because mortgage on property

-

was paid with husband's salary during the marriage and therefore was not maintained as separate); see also Gilman, 32 Va. App. at 119, 526 S.E.2d at 770 (holding that non-owning spouse has the burden of proving that property purchased with a loan secured by separate property is marital).  Because there is adequate evidence to support the commissioner's finding that the three trailers were marital, the trial court erred in overruling it.  Consequently, we reverse the trial court's determination that trailers 6212, 6231 and 6261 are separate property and its deduction of $33,500 from the marital assets, and remand so that the trial court may equitably distribute the $33,500.

H.  Denial of Motion to Re-Value North Carolina Property

Biviano claims that the trial court erred in denying his motion to re-value the lake house property on the ground that his separate non-marital share in the property had increased in the two years since the original valuation figures were provided.  However, because Biviano failed to file an exception to the commissioner's valuation of the lake house, we will not consider the issue on appeal.  See McLaughlin v. McLaughlin, 2 Va. App. 463, 470, 346 S.E.2d 535, 539 (1986) ("The established rule in Virginia is that parts of the commissioner's report not excepted to are considered as admitted to be correct, as the party excepting, must put his finger on the error that the court may see what it has to decide." (internal citations and quotations omitted)); see also Matthews v. Matthews, 26 Va. App. 638, 649,

-

496 S.E.2d 126, 131 (1998) (finding issue barred because appellant did not except to commissioner's report).  In any event, the issue is mooted by our affirmance of the trial court's determination that the lake house property was entirely marital.

## I.  Appellate Attorney's Fees

Kenny contends that we should direct the trial court to award her attorney's fees and costs incurred on appeal because Biviano's appeal lacks merit.  Under our decision in Gottlieb v. Gottlieb, 19 Va. App. 77, 448 S.E.2d 666 (1994), we find wife is entitled to appellate attorney's fees and costs and remand the issue to the trial court for determination of an appropriate amount.  See id. at 95, 448 S.E.2d at 677 (awarding appellate attorney's fees where "[m]any of husband's questions presented or assignments of error were not supported by the law or the evidence").

Affirmed, in part,
reversed, in part,
and remanded.

-