# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Wednesday** *the* **12th** *day of* **November, 2008**.

Lynchburg Division of Social Services, Appellant,

against        Record No. 2792-05-3
               Circuit Court No. CJ0500755

James Cook and Sandra Cook, Appellees.

Upon Remand from the Supreme Court of Virginia

Before Chief Judge Felton, Judges Elder, Frank, Humphreys, Clements,
Kelsey, McClanahan, Haley, Petty, Beales and Powell

In accordance with the mandate of the Supreme Court of Virginia entered on October 2, 2008 and the opinion of that Court rendered on September 12, 2008, the opinion previously rendered by this Court on August 14, 2007 is withdrawn, the mandate entered on that date is vacated, and this case is "remanded to the trial court for further proceedings in accordance with the principles expressed in the written opinion of [the Supreme] Court."

_____

Humphreys, J. with whom Frank, Clements and Petty, JJ., join, concurring.

I concur in this order because I must. However, I take the unusual step of writing separately because I believe the portion of the opinion of the Supreme Court of Virginia relating to the award of attorney's fees in this case has far reaching consequences, perhaps unintended, that I feel constrained to point out.

In its opinion, reversing this Court for applying the wrong legal standard in determining whether to award attorney's fees for expenses incurred on appeal, the Supreme Court noted that we relied upon Code § 16.1-278.19 and our decisions in <u>Cartwright v. Cartwright</u>, 49 Va. App. 25, 635 S.E.2d 691 (2006) and <u>Gottlieb v. Gottlieb</u>, 19 Va. App. 77, 448 S.E.2d 666 (1994), as indeed we did. However, it is unclear from the opinion of the Supreme Court whether or not this Court any longer has the discretion

to award attorney's fees in these cases at all. In reversing our decision, the Supreme Court did not address whether Code § 16.1-278.19 actually gives this Court the authority to award appellate attorneys' fees in cases originating in juvenile and domestic relations district courts ("J&DR courts"). Instead, the Supreme Court expressly limited its holding to reversing this Court for failing to apply the standard set forth in Code § 16.1-278.19.

Cartwright and Gottlieb thus remain valid precedent, and we are obligated to continue to follow them unless and until they are overruled by this Court sitting *en banc* or by the Supreme Court of Virginia. Pursuant to Cartwright, Gottlieb and Code § 16.1-278.19, we "*may* award attorneys' fees and costs on behalf of any party as the court deems appropriate based on the relative financial ability of the parties." (Emphasis added.) In reversing this Court, the Supreme Court stated that it was expressing no opinion as to whether attorney's fees associated with the appeal should have been awarded. Rather, the Supreme Court noted that it was merely holding that, under Code § 16.1-278.19, we erred by applying the wrong standard in doing so.

Curiously, however, the opinion and mandate of the Supreme Court directed that we remand to the *circuit court*, with instructions that it, rather than this Court, conduct the determination of whether attorney's fees should be awarded on appeal. Typically, when a lower court errs, as we did here, the case is remanded with instruction that the error be corrected by the court which erred. This has been true in the past for an award of attorney's fees, where the case is remanded to the court in which the parties incurred those expenses. For example, in Antonelli v. Antonelli, 242 Va. 152, 409 S.E.2d 117 (1991), the Supreme Court awarded attorney's fees for expenses incurred in the appeal to the Supreme Court, remanded to the Court of Appeals, directing us to award attorney's fees on account of the costs incurred in our Court, and ordered us to remand to the circuit court for its reconsideration of the parties' attorney's fees incurred in that court. Here, the Supreme Court has departed from that precedent and ordered the circuit court to determine the propriety of an award of attorney's fees for expenses incurred in the Court of Appeals.

In my view, ordering us to remand directly to the circuit court presents at least two problems. First, it is unclear what statutory authority the circuit court has to award attorney's fees for expenses incurred in an appeal to the Court of Appeals. Code § 16.1-278.19 gives the J&DR courts the authority to award attorney's fees "in cases properly before [them]." Cartwright and Gottleib extended that authority to the Court of Appeals, in cases before it. However, no statute or previous case that I can find gives the circuit court the authority to determine whether a party should receive an award for attorney's fees for expenses incurred in an appeal to a higher court. The Supreme Court's decision in this case has either inadvertently ordered the circuit court to do something that court has no authority to do, or it has impliedly given the circuit courts authority that they never had before.

Second, in light of the Supreme Court's decision in this case, it would seem to be appropriate for this Court to revisit the issue in Cartwright and Gottlieb with respect to whether Code § 16.1-278.19 provides any authority for the award of appellate attorney's fees. Yet it appears that this Court will now have no opportunity to do so. If the circuit court is the appropriate court to determine appellate attorney's fees in this case, it must be the appropriate court for all such requests made pursuant to Code § 16.1-278.19. In essence, the Supreme Court has apparently taken the authority that we, correctly or not, bestowed upon ourselves in Gottlieb and Cartwright, and given that authority to the circuit courts.

However, the Supreme Court did not overrule Gottlieb or Cartwright and remanding this case to the circuit court to determine whether to award attorney's fees on appeal ignores the obvious fact that the circuit court remains bound by these precedents and, thus, is hardly in the best position to determine whether Code § 16.1-278.19 gives the Court of Appeals, or any other court, the authority to award appellate attorney's fees in this case.

In my view, the only possible alternative construction of the Supreme Court's holding on this issue mandates a conclusion that, despite its express language otherwise, the Supreme Court implicitly held that there is no discretion whatsoever to refuse to award attorney's fees sought pursuant to Code § 16.1-278.19, provided only that the parties experience economic disparity. This construction reveals a

-3-

different set of readily foreseeable and equally significant consequences. Essentially, such an interpretation of the Supreme Court's opinion would require this Court to remand for an award of appellate attorney's fees in all cases originating in the J&DR courts where such fees are requested. Given this construction of the opinion and mandate of the Supreme Court, non-discretionary remand to the circuit court would certainly be appropriate because necessarily the only questions to be resolved, both factual in nature, are a determination of which party has the greater "financial ability to pay" and the amount of the attorney's fees that party will be liable for.

The predictable results of such a construction would be profound to say the least since Code § 16.1-278.19 applies to *all* cases originating in the J&DR courts. Under this analysis, the more affluent party will invariably be required to pay the attorney's fees of the other party in every JD&R case and at all levels of appeal, without regard to any other consideration. Certainly, in cases such as this one, the Department of Social Services of the locality in question will likely be the more affluent party, and will almost invariably be required to pay the attorney's fees of the other party regardless of any factor normally part of the equation in determining whether to award attorney's fees.

Notwithstanding the foregoing observations, the highest court of the Commonwealth has spoken and I respect the finality of its decision. I thus concur in this order remanding this case to the circuit court for the purpose of carrying out the mandate of the Supreme Court of Virginia.

_____

This order shall be published and certified to the trial court.

A Copy,

Teste:

*original order signed by a deputy clerk of the*
*Court of Appeals of Virginia at the direction*
*of the Court*

Clerk

-4-

COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Felton, Judges Benton, Elder, Frank, Humphreys, Clements, Kelsey,
    McClanahan, Haley, Petty and Beales
Argued at Richmond, Virginia


LYNCHBURG DIVISION OF SOCIAL SERVICES

                 OPINION BY
v.   Record No. 2792-05-3        JUDGE ELIZABETH A. McCLANAHAN
                 AUGUST 14, 2007
JAMES COOK, SANDRA COOK AND
 JIMMY COOK


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Leyburn Mosby, Jr., Judge

Susan L. Hartman (Mark B. Arthur, Guardian *ad litem* for the minor
child; City Attorney's Office, on briefs), for appellant.

Betsy H. Phillips for appellees James and Sandra Cook.

No brief or argument for appellee Jimmy Cook.


The Lynchburg Division of Social Services ("DSS") appeals a custody order granting

custody of a child to her grandparents, James and Sandra Cook (the "Cooks"). DSS argues that

because the child was placed in the custody of DSS pursuant to an emergency removal order

alleging abuse and neglect, and then made subject to a foster care plan, the trial court erred in

subsequently transferring custody to the Cooks pursuant to certain custody related statutes (Code

§§ 16.1-241(A)(3), 16.1-278.15, 20-124.2 and 20-124.3) separate and apart from the foster care

statutory scheme (Code §§ 16.1-281 through -282.1). A panel majority of this Court agreed with

DSS and reversed the decision of the trial court. We granted a petition for rehearing *en banc* and

stayed the mandate of the panel decision. Upon rehearing *en banc*, we affirm the trial court.

On appeal, we view the evidence in the light most favorable to the Cooks, the prevailing

parties below, and grant to them all reasonable inferences fairly deducible therefrom. Logan v.

Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). On

April 7, 2004, DSS removed the child from her parents' custody, based on allegations against the

father, and placed her in foster care. The Juvenile and Domestic Relations District Court of the

City of Lynchburg ("JDR court") entered an emergency removal order on April 8, 2004. On July

1, 2004, the JDR court entered an order transferring custody to DSS, and approving a foster care

plan with the goal of "return to home." On January 4, 2005, the JDR court approved a foster

care plan with a new goal of "continued foster care," and scheduled a permanency planning

hearing to be held on May 27, 2005.[1]

In the meantime, three different parties filed petitions for custody of the child. On April

6, 2004, the child's mother, Amy Cook ("mother"), filed for custody.[2] On April 8, 2004, the

Cooks and the child's father, Jimmy Cook ("father"), filed separate petitions for custody. Each

of the petitions specifically referenced the JDR court's jurisdiction over custody matters under

Code § 16.1-241(A)(3)[3]—separate and apart from the statutory scheme governing the pending

foster care plan. On March 4 and March 11, 2005, the JDR court conducted hearings on the

petitions. After finding it to be in the child's best interest, pursuant to Code §§ 16.1-278.15,

---

[1] The requirements for the foster care plan are provided in Code § 16.1-281, the foster care review hearing in Code § 16.1-282, and the permanency planning hearing in Code § 16.1-282.1.

[2] The mother filed her petition the day she purportedly separated from her husband, the child's father. DSS removed the child from the home the following day.

[3] Code § 16.1-241(A)(3) grants the JDR court jurisdiction over custody matters involving a child "[w]hose custody . . . is a subject of controversy or requires determination."

20-124.2, and 20-124.3, the JDR court transferred custody from DSS to the Cooks, by order dated March 11, 2005. The custody order also allowed supervised visitation with the mother, and prohibited visitation with the father. The mother, father, and DSS appealed.

DSS filed a pre-trial motion in circuit court to suspend execution of the JDR court's March 11, 2005 order pending a trial *de novo*. By order dated April 12, 2005, the circuit court denied the motion and incorporated the JDR court's order into its own interlocutory order, with modifications expediting the Cooks' visitation schedule with the child before she commenced residing with them, then set for no later than May 30, 2005.

On May 25, 2005, the circuit court heard argument on DSS's motion to remand based on a procedural challenge to the JDR court's March 11, 2005 custody order. DSS contended the JDR court "lacked jurisdiction" to hear the Cooks' custody petition because of the pending foster care plan, and requested that the circuit court thus remand the case to the JDR court for a permanency planning hearing, pursuant to the foster care statutes. Noting that disposition of the child's custody had proceeded in JDR court on "two track[s] . . . at the same time," the circuit court ruled there was no "procedural defect" in the JDR court, which had the statutory authority to award custody of the child to the Cooks apart from the foster care plan. Accordingly, the circuit court further ruled there was no requirement or need for a permanency planning hearing in JDR court. The circuit court also granted the mother certain periods of unsupervised visitation with the child.

After a two-day trial in October 2005, the circuit court, like the JDR court, transferred custody to the Cooks upon finding it to be in the child's best interest, under Code §§ 20-124.2 and 20-124.3.[4] In addition, the court allowed unsupervised visitation with the mother, and

---

[4] The circuit court specifically noted its review of the factors required to be considered under Code § 20-124.3 when determining the best interest of the child and, in doing so, found

- 3 -

supervised visitation with the father, as long as both remained in counseling.  The court denied

the father's petition for custody, and reserved the right to revisit the mother's petition for custody

at a later date.  The court also held that DSS no longer "need[ed] to be involved" with the case.

DSS then filed this appeal.

ANALYSIS

DSS argues both the JDR court and the circuit court "lacked jurisdiction" to consider the

custody petitions filed by the Cooks and the child's parents.[5]  Because the child was the subject

of a foster care plan filed with the JDR court pursuant to Code § 16.1-281, DSS contends the

disposition of the child could only be decided under the procedures set forth in the foster care

statutes.  Under those procedures, according to DSS, the JDR court was limited to either

reviewing the child's status, reviewing the foster care plan, or conducting a permanency planning

hearing.  DSS thus contends that neither the JDR court, nor the circuit court on appeal, had the

authority to "deviate" from the foster care statutory scheme by entertaining the parties' custody

petitions filed pursuant to Code § 16.1-241(A)(3), and awarding custody to the Cooks.

As a corollary to this argument, DSS further argues that the courts below applied the

wrong standard in determining what was in the child's best interest, and thereby transferring

custody to relatives and awarding visitation to both mother and father, pursuant to Code

§§ 16.1-278.15(F), 20-124.2(B), and 20-124.3.  Instead, according to DSS, the courts were

limited to applying standards set forth in the foster care statutes regarding an abused or neglected

_____

*inter alia*, that "the child's doing well in [the Cooks'] home" and that the court had "every
confidence that they'll be able to provide [the child] good support."

[5] DSS does not actually argue that the lower courts lacked subject matter jurisdiction in
granting the Cooks' custody petition, but rather argues that the courts erred in their exercise of
authority over the child's custody by applying the wrong custody related statutes when awarding
custody to the Cooks.  See Nelson v. Warden, 262 Va. 276, 552 S.E.2d 73 (2001) (explaining the
distinction between subject matter jurisdiction and the authority to exercise that jurisdiction).

- 4 -

child's contact or reunification with a parent, or placement of the child with a relative, as a foster care parent, pursuant to Code §§ 16.1-281(C1), 16.1-282(D1), and 16.1-282.1(A1). We disagree.[6]

## A. Custody Award

An issue of statutory construction, as here presented, is "a pure question of law which we review *de novo*" on appeal. Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (citations omitted). Under well established principles, "[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language." Id. In those instances, we do not "resort to the rules of statutory interpretation." Last v. Virginia State Bd. of Med., 14 Va. App. 906, 910, 421 S.E.2d 201, 205 (1992). In other words, "when the General Assembly has used words of a definite import, we cannot give those words a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed." Britt Constr., Inc. v. Magazzine Clean, LLC, 271 Va. 58, 62-63, 623 S.E.2d 886, 888 (2006) (citations omitted).

Title 16.1 of the Code provides several procedural means of obtaining child custody. Here, DSS initially obtained in the JDR court custody of the Cooks' granddaughter for placement in foster care, pursuant to Code §§ 16.1-281 through -282.1. The day after the child was taken from her parents by DSS, the Cooks filed their own petition for custody of the child in JDR court and were ultimately awarded custody, pursuant to Code §§ 16.1-241(A)(3), 16.1-278.15, 20-124.2, and 20-124.3.

---

[6] Because we decide it was appropriate for the lower courts to proceed under Code §§ 16.1-241(A)(3) and 16.1-278.15, the fact that the child was the subject of a foster care plan was not controlling and the related statutes were not applicable to the courts' adjudication of the three custody petitions before them. Consequently, DSS's other arguments, which are erroneously premised on mandatory application of that plan and related statutes in this case, are rendered moot and will not be considered. See Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998) (noting that appellate courts do not consider moot issues).

- 5 -

Code § 16.1-241 sets forth the JDR court's subject matter jurisdiction, including, among other things, "[t]he custody, visitation, support, control or disposition of a child . . . [which] is a subject of controversy or requires determination."[7] Code § 16.1-241(A)(3). This statute further plainly states, in dispositive terms: "The authority of the juvenile court to consider a petition involving the custody of a child *shall not be proscribed or limited* where the child has previously been awarded to the custody of a local board of social services," as in the instant case. Code § 16.1-241(A) (emphasis added).

Code § 16.1-278.15 then provides, in relevant part, that "[i]n cases involving the custody, visitation or support of a child pursuant to subdivision A 3 of § 16.1-241, the court may make *any* order of disposition to protect the welfare of the child and family as may be made by the circuit court." Code § 16.1-278.15(A) (emphasis added). Specifically, the JDR court "may award custody upon petition to any party with a legitimate interest therein, including, but not limited to, grandparents . . . ." Code § 16.1-278.15(B). This statute then reiterates verbatim that the JDR court's authority to consider such a petition for child custody "*shall not be proscribed or limited* where the custody of the child has previously been awarded to a local board of social services." Id. (emphasis added).

In filing the petition for custody of their granddaughter under this statutory scheme, the Cooks were not seeking to merely "step into the shoes" of a foster care parent under a foster care plan, and were not limited to such status upon their petition. Rather, pursuant to the express terms of these statutes, the Cooks were entitled to bring a direct, independent action seeking a change in the child's custody from DSS to the Cooks, separate and apart from any foster care plan. And both the JDR court and the circuit court, upon appeal, were expressly authorized to

---

[7] This jurisdictional authority is distinct from that granted to the JDR court under this same statute regarding "[t]he custody, visitation, support, control or disposition of a child . . . [w]ho is alleged to be abused [or] neglected . . . ." Code § 16.1-241(A)(1).

adjudicate the Cooks' petition and award them custody. In Code §§ 16.1-241(A) and 16.1-278.15(B), the General Assembly has stated unequivocally that the JDR court's authority to consider such a petition is not "proscribed or limited" by the fact that "custody of the child has previously been awarded to [DSS]." Consequently, through these provisions, the General Assembly has made the foster care plan statutes subordinate to the statutes under which the Cooks were awarded custody of their granddaughter, and did not conflate the two statutory schemes.

Given that the courts below had the authority to adjudicate the Cooks' petition and award them custody apart from the foster care plan, the courts also correctly applied the "best interest of the child" standard in making that award, pursuant to Code §§ 16.1-278.15(F), 20-124.2(B), and 20-124.3, rather than the standard for approving foster care parents, which did not apply.[8] Under Code § 16.1-278.15(F), the court is directed "[i]n any case or proceeding involving the custody or visitation of a child" to "consider the best interest of the child, including the considerations for determining custody and visitation set forth in Chapter 6.1 (§ 20-124.1 et seq.) of Title 20."

Code § 20-124.2, in turn, provides, in relevant part: that "[i]n any case in which custody or visitation of minor children is at issue, whether in a circuit court or district court, the court shall provide prompt adjudication, upon due consideration of all the facts, . . . [including] custody and visitation arrangements . . . "; that "[i]n determining custody, the court shall give primary consideration to the best interests of the child"; and that "[t]he court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and

---

[8] In other words, the courts below were not compelled, as DSS contends, to apply the standards and make the findings required for placing a child with a relative as a foster care parent, pursuant to Code §§ 16.1-281(C1), 16.1-282(D1), and 16.1-282.1(A1). We note, however, that Code § 16.1-282(D) incorporates the "best interest of the child" standard as part of the court's review of a foster care plan.

convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest," including grandparents, as set forth in Code § 20-124.1.  Code § 20-124.2(A) and (B).

Code § 20-124.3 then sets forth ten factors the court shall consider "[i]n determining best interests of a child for purposes of determining custody."  Those factors include, among others, "[t]he needs of the child, giving due consideration to other important relationships of the child, including but not limited to . . . extended family members;" "[a]ny history of family abuse . . . ;" and "[s]uch other factors as the court deems necessary and proper to the determination."  Id. Here, the circuit court, after noting its review of the factors under this statute and in determining that awarding custody to the Cooks was in the child's best interest, specifically found, *inter alia*, that "the child's doing well in [the Cooks'] home" and that the court had "every confidence that they'll be able to provide [the child] good support."

In sum, both the JDR court and the circuit court acted pursuant to express statutory authority in adjudicating the Cooks' petition for custody of their granddaughter, and in awarding them custody, upon finding that to be in the child's best interest.

## B.  Attorney's Fees

The Cooks request costs and attorney's fees associated with this appeal.  We have recognized an award of attorney's fees associated with an appeal in matters properly brought before the JDR court may be appropriate under Code § 16.1-278.19.  See Cartwright v. Cartwright, 49 Va. App. 25, 31, 635 S.E.2d 691, 694 (2006).  However, we cannot say DSS's position in this case was unreasonable, see O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996), because "the litigation addressed appropriate and substantial issues[,]" Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004). Therefore, we do not award attorney's fees associated with this appeal.

## CONCLUSION

For these reasons, we affirm the decision of the circuit court.

<u>Affirmed.</u>

Elder, J., with whom Benton and Haley, JJ., join, concurring.

I concur in the result reached by the majority. However, I write separately to articulate my understanding of the interplay between the findings required for placement of a child with a non-parent "party" or "person with a legitimate interest" pursuant to the more general child custody statutes, <u>see</u> Code §§ 16.1-241(A)(3), 16.1-278.15, 20-124.2, 20-124.3, and the findings required for placement of a child with a foster care parent pursuant to the abuse and neglect statutes, <u>see</u> Code §§ 16.1-281 to -282.1.

In my view, the criteria in Code §§ 20-124.2 and 20-124.3 for determining what is in the best interests of the child set out the overarching standard to be applied in any case involving a custody determination, but all best interests determinations are made in the context in which they arise. Neither Code § 16.1-282(D1) nor Code § 20-124.2 is intended to provide an all-inclusive list of factors to be considered in making the "best interests" determination. <u>See</u> Code § 20-124.3(10) (providing "the court shall consider," *inter alia*, certain factors enumerated (1) to (9) and "such other factors as the court deems necessary and proper to the determination").

The standard for approving a foster care placement set out in Code § 16.1-282(D) expressly requires compliance with the "best interests of the child" test and specifically incorporates the criteria of Code § 16.1-282(D1), which, although not specifically listed in Code §§ 20-124.2 or 20-124.3, are nevertheless subsumed in the best interests analysis. Any finding, pursuant to the general custody statutes, that an award of custody to "a relative other than the child's prior family," Code § 16.1-282(D1), is in the child's best interests includes an implicit finding that the relative

> (i) is . . . willing and qualified to receive and care for the child;
> (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect . . . .

- 10 -

Id. Further, Code § 20-124.2 expressly provides that, in the case of an award of custody to a non-parent, the best interest finding must be made by clear and convincing evidence rather than by a mere preponderance, as is required by Code § 16.1-282(D1) for the above four specific criteria.

Thus, here, the court's award of custody included an implicit finding, by clear and convincing evidence, that the Cooks were "willing and qualified to receive and care for the child; . . . willing to have a positive, continuous relationship with the child; . . . committed to providing a permanent, suitable home for the child; and . . . willing and . . . [able] to protect the child from abuse and neglect," as set out in Code § 16.1-282(D1). The court was not bound by the requirement of Code § 16.1-282(D1) to set out any subsidiary findings in its order because it proceeded under Code §§ 20-124.2 and 20-124.3 instead.

Humphreys, J. with whom Petty, J. joins, concurring in part, dissenting in part, and dissenting from the judgment.

I agree with the majority that the JDR court and the circuit court had jurisdiction to adjudicate the issue of custody with regard to the child. However, because I believe that the foster care statutes — specifically, Code §§ 16.1-281 and 16.1-282 — must govern the manner in which the trial court must address the issue of custody of a child who has been deemed abused and neglected, I respectfully dissent from the majority view on the remaining issues.

In this case, DSS argues that the trial court erred in transferring custody to the Cooks pursuant to Code §§ 16.1-278.15 and 20-124.3. Specifically, DSS contends that once a child is taken into custody, and is subject to a foster care plan, the trial court is required to make findings pursuant to Code § 16.1-282 in order to transfer custody to an interested party, even a relative. I agree. Moreover, I would further hold that although an abused or neglected child has been placed with a relative or other interested party, DSS is not relieved of its duty to comply with the statutory mandates of Code §§ 16.1-281, 16.1-282, and 16.1-282.1, and thus the trial court erred in holding that DSS no longer "need[ed] to be involved."

### A. Custody Standard

A child who is taken into custody pursuant to an emergency removal order, and then placed in the custody of social services, is statutorily subject to a foster care plan. Code § 16.1-281; see also Strong v. Hampton Dep't of Soc. Servs., 45 Va. App. 317, 321-22, 610 S.E.2d 873, 875 (2005) ("The statute [Code § 16.1-281] places on the Department the obligation to prepare a foster care plan."). In order for the court to transfer custody of a child who is deemed abused or neglected, either pursuant to a foster care plan, or a petition for custody, the court must make specific factual findings. Specifically, Code § 16.1-281 requires that,

> [a]ny order transferring custody of the child to a relative other than
> the child's prior family shall be entered only upon a finding, based
> upon a preponderance of the evidence, that the relative is one who,

after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect; *and the order shall so state*.  The court's order transferring custody to a relative should further provide for, as appropriate, any terms or conditions which would promote the child's interest and welfare; ongoing provision of social services to the child and the child's custodian; and court review of the child's placement.

(Emphasis added.)

Noticeably absent from this statute is any reference to the general custody statute relied upon by the majority, Code § 20-124.3, regarding the "best interests of the child" standard.  In fact, none of the statutes addressing the foster care plan, the foster care review hearing, or the permanency planning hearing, incorporate, by reference, the general standard for determining custody.  See Code §§ 16.1-281, 16.1-282, and 16.1-282.1.[9]  Instead, the statutes set forth a more

---

[9] In footnote 8, the majority notes that "Code § 16.1-282(D) incorporates the 'best interests of the child' standard as part of the court's review of a foster care plan."  However, the entire sentence is as follows:

> At the conclusion of the hearing, the court shall, upon the proof adduced in accordance with the best interests of the child *and subject to the provisions of subsection D1*, enter any appropriate order of disposition consistent with the dispositional alternatives available to the court at the time of the original hearing.

Code § 16.1-282(D) (emphasis added).  Subsection D1 reiterates the language set forth in Code § 16.1-281.  Specifically, subsection D1 states,

> Any order transferring custody of the child to a relative other than the child's prior family shall be entered only upon a finding, based upon a preponderance of the evidence, that the relative is one who, after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect; and the order shall so state.  The court's order transferring custody to a relative should further

stringent standard that the court must follow in order to transfer the custody of an abused or neglected child to a relative. Moreover, rather than specifying that these findings of fact are limited to orders resulting from a foster care review hearing or a permanency planning hearing, the statute requires that *any* order transferring custody of a child in foster care to a relative contain specific findings of fact.

The majority holds that because Code §§ 16.1-241(A) and 16.1-278.15(B) state that the JDR court's authority to consider a petition for custody "shall not be proscribed or limited where the custody of the child has previously been awarded to [DSS]," the trial court correctly entertained and disposed of the custody petition pursuant to Code §§ 20-124.2 and 20-124.3, and therefore any discussion of the foster care statutes is moot. Moreover, the majority holds that the language contained in Code §§ 16.1-241(A) and 16.1-278.15(B) manifests the General Assembly's intent not to conflate, in any way, the two statutory schemes, and to make the foster care statutes subordinate to the general custody statutes. I disagree.

Although the majority correctly notes that the trial court has jurisdiction over "[t]he custody, visitation, support, control or disposition of a child . . . [which] is a subject of controversy or requires determination," see Code § 16.1-241(A)(3), it seemingly dismisses, in a footnote, the fact that Code § 16.1-241(A)(1) grants the trial court jurisdiction over "[t]he custody, visitation, support, control or disposition of a child . . . [*w*]*ho is alleged to be abused [or] neglected* . . .," see Code § 16.1-241(A)(1) (emphasis added). The majority then

---

provide for, as appropriate, any terms and conditions which would promote the child's interest and welfare; ongoing provision of social services to the child and the child's custodian; and court review of the child's placement.

Clearly, the "best interests of the child" will always be of importance when determining custody of a child. However, in the case of an abused or neglected child who has been placed in the custody of social services for his or her protection, the statute requires that the court make specific findings of fact to maintain the safety and welfare of the child.

- 14 -

erroneously relies, as did the circuit court, upon Code § 16.1-241(A)(3) to determine that the circuit court had authority to dispense with the issue of custody without taking into consideration the standards set forth in the foster care statutes, specifically Code § 16.1-281. In my view, the error is two-fold.

First, construing these statutes in the manner suggested by the majority fails to take into consideration an important canon of statutory construction. That is, "a statute [must] be construed from its four corners and not by singling out a particular word or phrase." First Virginia Bank v. O'Leary, 251 Va. 308, 312, 467 S.E.2d 775, 777 (1996). Moreover, "a legislative enactment 'should be interpreted, if possible, in a manner which gives meaning to every word.'" Id. (citing Monument Assoc. v. Arlington County Bd., 242 Va. 145, 149, 408 S.E.2d 889, 891 (1991)).

Here, as the majority notes, the General Assembly has granted jurisdiction to the juvenile and domestic relations district courts over the custody disposition of a child who is alleged to be abused or neglected *separate and apart* from the jurisdiction over the disposition of a child whose custody is the subject of controversy. Under the rules of statutory construction, had the legislature intended for subsection (A)(3) to govern the cases where a child is alleged to be abused or neglected, it would not have included subsection (A)(1), which *specifically* addresses such cases. To hold that the trial court did not err in entertaining the issue of custody of an abused and neglected child pursuant to Code § 16.1-241(A)(3) renders Code § 16.1-241(A)(1) meaningless.

Second, the majority implicitly contends that construing the statutes as I suggest would proscribe, or limit, the trial court's authority to consider a custody petition by an interested party for a child who is alleged to be abused and neglected. However, in my view, the statute's plain meaning indicates that once a child is placed in the custody of social services, the child's

- 15 -

placement with DSS does not proscribe or limit the circuit court's ability to *consider* a petition for custody. In other words, the child's placement does not remove the trial court's jurisdiction over issues such as custody.

In Walla v. Prince William County Dep't of Social Servs., 25 Va. App. 356, 363-64, 488 S.E.2d 653, 657 (1997), this Court addressed whether a juvenile court judge had the authority to consider a FAPT report and order social services to obtain treatment for a minor in a residential treatment facility. Social services argued that the juvenile court judge divested himself of that authority when he granted social services legal custody of the minor under Code § 16.1-278.4(6)(c).[10] Id. However, this Court held that

> the juvenile court judge retained the authority to "review the status" of the minor even after she was placed in the custody of Social Services. Code § 16.1-281(E) expressly states that children in the custody of Social Services are those the juvenile court judge can review pursuant to that section. See id. (giving the juvenile court judge the power "to review the status of children in the custody of local boards of . . . social services").
>
> Contrary to the argument of Social Services, Code § 16.1-278.4(6)(c) does not mandate a different result. The statement that "the [local] board [of social services] to which the child is committed shall have the final authority to determine the appropriate placement for the child," Code § 16.1-278.4(6)(c), was intended to give Social Services the power to override the wishes or recommendations of the child's parents, the FAPT, or any other interested party. That section was not intended to divest the juvenile court judge of power to review the status of the minor.

Id. at 363, 488 S.E.2d at 657. Moreover, in Walla we continued, stating, "the scope of the judge's power to oversee the provision of treatment and care to a particular child is not limited to a review of the plan submitted by Social Services," and "[t]he General Assembly clearly

---

[10] This statute states that social services "shall have the final authority to determine the appropriate placement." Code § 16.1-278.4(6)(c).

intended to provide the juvenile courts, under Code § 16.[1]-281, broad authority to oversee the status of children in the custody of Social Services." Id. at 364, 488 S.E.2d at 657.

Likewise, in my view, Code § 16.1-281 was not intended to "divest" the trial court of jurisdiction over the custody matter, nor was it intended to limit or proscribe the trial court's authority to *entertain* the custody matter. Nor does Code § 16.1-281 limit the trial court to considering just the foster care plan or the objectives set forth by DSS. In fact, Code § 16.1-241 makes it perfectly clear that the trial court has jurisdiction over custody matters. And, in my view, when read in conjunction with the other pertinent statues, Code § 16.1-281 simply requires that when the custody of an abused and neglected child is at issue, the trial court must make specific written findings of fact, designed to protect the child from the dangers for which he or she was removed from the home. See Code §§ 16.1-281, 16.1-282, 16.1-282.1.[11] In other words, the trial court is free to decide the issue of custody as it sees fit, so long as it incorporates into the record a finding that

> the relative or other interested individual is one who, after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing

---

[11] Even Code § 16.1-278.2 contains similar language to the foster care statutes. According to Code § 16.1-278.2, once a court enters an order permitting DSS to place an abused or neglected child, DSS may transfer custody of the child to a relative only upon a finding that,

> the relative or other interested individual is one who, after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect; and the order shall so state. The court's order transferring custody to a relative or other interested individual should further provide for, as appropriate, any terms or conditions which would promote the child's interest and welfare; ongoing provision of social services to the child and the child's custodian; and court review of the child's placement.

Code § 16.1-278.2(A1).

to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect.

Code § 16.1-278.2(A1). Therefore, I would hold that the trial court erred in addressing the issue of custody pursuant to Code §§ 16.1-241(A)(3) and 16.1-278.15, and in failing to recognize that Code § 16.1-281 applied to the disposition of the petition for custody filed by the Cooks.

Nevertheless, I recognize that under the harmless error doctrine, this Court must affirm the judgment of the trial court if "the error complained of could not have affected the result." See Rhoades v. Painter, 234 Va. 20, 24, 360 S.E.2d 174, 176 (1987). However, in this case, DSS asserts, and the record reflects, that the trial court failed to make a finding that the Cooks were "willing and ha[d] the ability to protect the child from abuse and neglect," as required by Code § 16.1-281. In my view, because the statute requires the court to make this specific finding, this error is not harmless. Therefore, I would hold that the trial court erred in failing to make the required findings, as mandated by Code § 16.1-281.

## B. Continuation of the Foster Care Plan

According to Code § 16.1-282, the court "shall" conduct a foster care review hearing for "a child who was the subject of a foster care plan filed with the court pursuant to § 16.1-281." The court must conduct this hearing "if the child . . . is under the legal custody of . . . social services or a child welfare agency and has not had a petition to terminate parental rights granted, filed or ordered to be filed on the child's behalf." Code § 16.1-282. Code § 16.1-282 also mandates that, "[a]fter the hearing required pursuant to subsection C, the court *shall* schedule a permanency planning hearing on the case to be held five months thereafter in accordance with § 16.1-282.1 or within thirty days upon the petition of any party entitled to notice in proceedings under this section." (Emphasis added.)

In my view, by using the word "shall," the legislature intended for any department of social services to follow specific statutory provisions once a child has been taken into custody because of abuse or neglect. In fact, we have held that "the statute places on the Department the obligation to prepare a foster care plan" and that "[n]othing in the statutory scheme . . . removes the burden on [the Department] to establish compliance with the statutes." Strong, 45 Va. App. at 321-22, 610 S.E.2d at 875. In other words, although the trial court may grant temporary custody to a relative or other interested party, the statute contemplates that a foster care review hearing, pursuant to Code § 16.1-282, and ultimately a permanency planning hearing, pursuant to Code § 16.1-282.1, will take place. Accordingly, because the statutory scheme requires DSS to comply with certain provisions, I would hold that the trial court erred in terminating DSS's involvement in the case.

For these reasons, I would reverse the judgment of the circuit court and remand for further proceedings consistent with this analysis.

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **13th** *day of* **March, 2007**.

Lynchburg Division of Social Services, Appellant,

against        Record No. 2792-05-3
               Circuit Court No. CJ0500755

James Cook and
  Sandra Cook, Appellees.

Upon a Petition for Rehearing En Banc

Before the Full Court

On February 20, 2007 came the appellees, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on February 6, 2007, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered herein on February 6, 2007 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

Notwithstanding the provisions of Rule 5A:35, the following briefing schedule hereby is established:  Appellant shall file an opening brief upon rehearing *en banc* within 21 days of the date of entry of this order; appellees shall file an appellee's brief upon rehearing *en banc* within 14 days of the date on which the opening brief is filed; and appellant may file a reply brief upon rehearing *en banc* within 14 days of the date on which the appellees' brief is filed.  The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter.  It is further ordered that the appellee shall file twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, McClanahan and Petty
Argued at Salem, Virginia


LYNCHBURG DIVISION OF SOCIAL SERVICES

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2792-05-3                      JUDGE ROBERT J. HUMPHREYS
                                                    FEBRUARY 6, 2007
JAMES COOK, SANDRA COOK AND
 JIMMY COOK


             FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                         J. Leyburn Mosby, Jr., Judge

             Susan L. Hartman, Assistant City Attorney (City Attorney's Office,
             on brief), for appellant.

             Betsy H. Phillips; Mark B. Arthur, Guardian *ad litem* for the minor
             child, for appellees James and Sandra Cook.

             No brief or argument for appellee Jimmy Cook.


        The Lynchburg Division of Social Services ("LDSS") appeals a custody order granting

custody of the child to her grandparents, James and Sandra Cook ("the Cooks").  On appeal,

LDSS argues that because the child was placed in the custody of LDSS pursuant to an

emergency removal order alleging abuse and neglect, the trial court erred in transferring custody

to the Cooks.  Specifically, LDSS contends that the trial court (1) lacked "jurisdiction" "to hear

an appeal of a custody determination for a child who was the subject of a foster care plan filed

pursuant to § 16.1-281," (2) erred in "failing to make the findings required under

§§ 16.1-281(C1), 16.1-282(D1) and 16.1-282.1(A1)," (3) erred in "transferring custody of a child

who was the subject of a foster care plan to a relative when, at the time of the hearing, the mother

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

had substantially corrected or eliminated the conditions which resulted in the neglect or abuse," and (4) erred in "allowing the father supervised visitation . . . when there was no evidence presented that the father had substantially corrected or eliminated the conditions which resulted in the neglect or abuse of the child."

For the following reasons, we hold that the issue of custody was properly before the circuit court. However, we hold that the trial court erred in granting custody pursuant to Code §§ 16.1-278.15 and 20-124.3, as the trial court failed to make specific factual findings as required by Code § 16.1-281. Moreover, we hold that the trial court erred in finding that LDSS "[did not] need to be involved" in the case once the Cooks obtained custody. We do not address whether the trial court erred in refusing to transfer custody back to the child's mother, or in allowing the child's father supervised visitation. Accordingly, we reverse and remand for a decision consistent with this opinion.

## BACKGROUND

On appeal, "[w]e view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence established the following.

On April 7, 2004, LDSS removed the child from her parents' custody, and placed her in foster care. The juvenile and domestic relations district court ("J&DR") entered an emergency removal order on April 8, 2004, and on July 1, 2004, the J&DR entered an order transferring custody to LDSS, and approving a foster care plan with the goal of "return to home." On January 4, 2005, the J&DR approved a foster care plan with a new goal of "continued foster care," and scheduled a permanency planning hearing to be held on May 27, 2005. None of the orders mentioned above were appealed.

In the meantime, three different parties filed petitions for custody of the child. On April 6, 2004, Amy Cook ("mother") filed for custody, and on April 8, 2004, the Cooks and Jimmy Cook ("father") filed for custody. On March 4 and March 11, 2005, the J&DR conducted hearings on the petitions. The J&DR then transferred custody from LDSS to the Cooks, pursuant to Code § 20-124.2.[1] The custody order also allowed supervised visitation with the mother, and prohibited visitation with the father. The child's mother, the child's father, and LDSS appealed.

LDSS filed a motion to suspend execution of the J&DR order. The circuit court denied the motion and incorporated the March 11, 2005 order into the new order. The new order contained the following modifications: (1) the Cooks were to have two visits per week for the

---

[1] Code § 20-124.2 reads, in pertinent part, as follows:

> A. In any case in which custody or visitation of minor children is at issue, whether in a circuit or district court, the court shall provide prompt adjudication, upon due consideration of all the facts, of custody and visitation arrangements, including support and maintenance for the children, prior to other considerations arising in the matter. The court may enter an order pending the suit as provided in § 20-103. The procedures for determining custody and visitation arrangements shall insofar as practical, and consistent with the ends of justice, preserve the dignity and resources of family members. Mediation shall be used as an alternative to litigation where appropriate. When mediation is used in custody and visitation matters, the goals may include development of a proposal addressing the child's residential schedule and care arrangements, and how disputes between the parents will be handled in the future.
>
> B. In determining custody, the court shall give primary consideration to the best interests of the child. The court shall assure minor children of frequent and continuing contact with both parents, when appropriate, and encourage parents to share in the responsibilities of rearing their children. As between the parents, there shall be no presumption or inference of law in favor of either. The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest. The court may award joint custody or sole custody.

remainder of the month of March, (2) beginning in April, the Cooks were to have one overnight visit in addition to the two visits per week, (3) beginning in May, the Cooks were to have three overnights per week, and (4) by May 30, the child was to commence residing with the Cooks.

On May 25, 2005, the circuit court entered an interlocutory order addressing whether the foster care plan remained in effect in light of the March 11, 2005 custody order. Finding that there "was no procedural defect in the Juvenile Court proceedings that would result in the foster care plan's remaining in effect after entry of the . . . custody order," the trial court found that there was no requirement or need for the permanency planning hearing. Thus, the trial court denied LDSS's motion to stay the J&DR order pending a trial *de novo*.

On October 4 and 5, 2005, the circuit court heard the custody appeal. Pursuant to Code § 20-124.2, the court transferred custody to the Cooks. The court also allowed unsupervised visitation with the mother, and supervised visitation with the father, as long as both remained in counseling. The court denied the father's petition for custody, and reserved the right to revisit the mother's petition for custody on July 11, 2006. The court also held that LDSS "[did not] need to be involved" with the case. LDSS now appeals.

ANALYSIS

LDSS argues that because the J&DR entered an order delineating a foster care plan with the goal of "continued foster care," the J&DR, and ultimately the Lynchburg Circuit Court, "lacked jurisdiction"[2] to entertain the petitions for custody. Specifically, LDSS argues that a

_____

[2] LDSS contends that because the parties failed to file the appropriate petitions, the trial court lacked "jurisdiction." We assume LDSS inartfully uses this term in the context of the issue it presents. Although failure to file the appropriate petition may result in the matter being improperly before the trial court, the failure to file the appropriate petition does not result in a lack of jurisdiction over the subject matter.

In general, juvenile and domestic relations district courts have exclusive original jurisdiction over proceedings involving the custody, visitation, support, control or disposition of a child. See Code § 16.1-241(A). "The authority of the juvenile court to consider a petition involving the custody of a child shall not be proscribed or limited where the child has previously

- 4 -

petition for foster care review, conforming to the requirements set forth in Code § 16.1-282, should have been filed and that the J&DR was obligated, pursuant to Code § 16.1-282.1(A), to conduct a permanency planning hearing before it could entertain the issue of custody. In the alternative, LDSS argues that even if the court had "jurisdiction" to transfer custody to the Cooks, the trial court erred in not making the required findings pursuant to Code §§ 16.1-281(C1), 16.1-282(D1) and 16.1-282.1(A1).

Whether the custody matter was properly before the trial court, and whether the trial court used the appropriate standard to determine custody, are issues of statutory construction which we review *de novo*. See Conkling v. Commonwealth, 45 Va. App. 518, 521, 612 S.E.2d 235, 237 (2005) ("We consider questions of pure statutory construction *de novo*."). When faced with an issue of statutory construction, we are bound by the "plain meaning rule," and we must give full effect to the plain meaning of the words chosen by the legislature. See Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).

We also must heed a fundamental principle of statutory construction, *expressio unius est exclusio alterius*, or "'where a statute speaks in specific terms, an implication arises that omitted terms were not intended to be included within the scope of the statute.'" Conkling, 45 Va. App. at 522, 612 S.E.2d at 237 (quoting Commonwealth v. Brown, 259 Va. 697, 704-05, 529 S.E.2d

---

been awarded to the custody of a local board of social services." Id. Moreover, "[n]othing in [Code § 16.1-281] shall limit the authority of the juvenile judge or the staff of the juvenile court, upon order of the judge, to review the status of [a child] in the custody of local boards of social services." Code § 16.1-281(F). See Walla v. Prince William County Dep't of Social Servs., 25 Va. App. 356, 363-64, 488 S.E.2d 653, 657 (1997) (quoting Code § 16.1-281(E) and holding that a "juvenile court judge retain[s] the authority to 'review the status' of [a] minor even after [the child is] placed in the custody of Social Services").

In Walla, we held that the clear meaning of the statute indicates that "[t]he General Assembly clearly intended to provide the juvenile courts, under Code § 16.[1]-281, broad authority to oversee the status of children in the custody of Social Services." Id. at 364, 488 S.E.2d at 657. Thus, to the extent that LDSS's argument may be read to suggest that the trial court lacked subject matter jurisdiction to entertain the custody order, we disagree.

96, 100 (2000)). Thus, when construing a statute, we recognize that, "when a legislative enactment limits the manner in which something may be done, the enactment also evinces the intent that it shall not be done another way." Grigg v. Commonwealth, 224 Va. 356, 364, 297 S.E.2d 799, 803 (1982).

## I.

LDSS argues that a general petition for custody is not sufficient to bring the custody matter properly before the court. Instead, LDSS argues that a petition for review of the foster care plan, pursuant to Code § 16.1-282, or a petition for a permanency planning hearing, pursuant to Code § 16.1-282.1, must be filed in order for the custody issue to be properly before the J&DR. We disagree with LDSS.

Code §§ 16.1-281, 16.1-282, and 16.1-282.1(A) delineate the steps that a local department of social services must take in order to make any decision relevant to the placement of a child, or which affects an individual's parental rights to that child. Specifically, Code § 16.1-281 requires LDSS to create a "foster care plan" in situations where "legal custody of a child is given to a local board of social services or a child welfare agency." Moreover, LDSS must file a specific petition in the juvenile and domestic relations district court to initiate a foster care review hearing or a permanency planning hearing. See Code §§ 16.1-282 and 16.1-282.1. And, any "interested party" seeking a *review* of the foster care plan must also file a petition that conforms to the statutory requirements. Code § 16.1-282.

However, these code sections do not address how an "interested party" should petition the court for temporary *custody* of a child who is subject to a foster care plan. See Code § 16.1-282. In other words, although these sections of the Code require LDSS or an "interested party" to file a specific petition for a review of the plan, these statutes do not require an "interested party" who is seeking temporary custody — as opposed to a review — to submit a

- 6 -

petition different from that set forth in Code §§ 16.1-260[3] and 16.1-262.  As such, a petition for

custody brought under Code § 16.1-241, and containing the information required under Code

§§ 16.1-260 and 20-124.1 *et seq.*, is sufficient to bring the issue of custody before the court.

Accordingly, we hold that the issue regarding the custody of the child was properly before the

trial court.

## II.

LDSS argues the trial court erred in transferring custody to the Cooks pursuant to Code

§§ 16.1-278.15 and 20-124.3.  Specifically, LDSS contends that once a child is taken into

custody, and is subject to a foster care plan, the trial court is required to make findings pursuant

to Code § 16.1-282 in order to transfer custody to an interested party.  We agree and further hold

that, when a trial court transfers custody to an interested party pending the disposition of an

LDSS foster care plan, the interested party merely "steps into the shoes" of a foster care parent.

---

[3] According to Code § 16.1-260, "[a]ll matters alleged to be within the jurisdiction of the court shall be commenced by the filing of a petition" which shall conform to Code § 16.1-262. Code § 16.1-262 requires that the petition for custody contain the following:

> 1. Statement of name, age, date of birth, if known, and residence of the child.
>
> 2. Statement of names and residence of his parents, guardian, legal custodian or other person standing in loco parentis and spouse, if any.
>
> 3. Statement of names and residence of the nearest known relatives if no parent or guardian can be found.
>
> 4. Statement of the specific facts which allegedly bring the child within the purview of this law.  If the petition alleges a delinquent act, it shall make reference to the applicable sections of the Code which designate the act a crime.
>
> 5. Statement as to whether the child is in custody, and if so, the place of detention or shelter care, and the time the child was taken into custody, and the time the child was placed in detention or shelter care.

Accordingly, although the child has been placed with a relative or other interested party, LDSS is not relieved of its duty to comply with the statutory mandates of Code §§ 16.1-281, 16.1-282, and 16.1-282.1.[4]

---

[4] Although acknowledging that Code § 16.1-241, which sets forth the J&DR court's subject matter jurisdiction, contains two separate provisions: one granting jurisdiction over "[t]he custody, visitation, support, control or disposition of a child . . . [which] is a subject of controversy or requires determination," Code § 16.1-241(A)(3), and the other granting jurisdiction over "[t]he custody, visitation, support, control or disposition of a child . . . [w]ho is alleged to be abused [or] neglected . . .," Code § 16.1-241(A)(1), the dissent erroneously relies, as did the circuit court, upon Code § 16.1-241(A)(3) to determine that the circuit court had authority to dispense with the issue of custody without taking into consideration the standards set forth in the foster care statutes, specifically Code § 16.1-281. The error is two-fold.

First, construing these statutes in the manner suggested by the dissent fails to take into consideration an important canon of statutory construction. That is, "'where a statute speaks in specific terms, an implication arises that omitted terms were not intended to be included within the scope of the statute.'" Conkling, 45 Va. App. at 522, 612 S.E.2d at 237 (quoting Brown, 259 Va. at 704-05, 529 S.E.2d at 100). Thus, when construing a statute, we must recognize that, "when a legislative enactment limits the manner in which something may be done, the enactment also evinces the intent that it shall not be done another way." Grigg, 224 Va. at 364, 297 S.E.2d at 803.

Here, as the dissent notes, the General Assembly has granted jurisdiction to the juvenile and domestic relations district courts over the custody disposition of a child who is alleged to be abused or neglected "separate and apart" from the jurisdiction over the disposition of a child whose custody is the subject of controversy. Under the rules of statutory construction, had the legislature intended for subsection (A)(3) to govern the cases where a child is alleged to be abused or neglected, it would not have included subsection (A)(1), which *specifically* addresses such cases.

Second, the dissent also ignores another primary rule of statutory interpretation which requires that, whenever possible, we must attempt to harmonize apparently conflicting statutes and make every effort to give effect to both. See Lake Monticello Owners' Assoc. v. Lake, 250 Va. 565, 570, 463 S.E.2d 652, 655 (1995). By placing emphasis on Code § 16.1-241(A)(1), instead of attempting to harmonize the alleged "conflict" within the subsections of the statute, the dissent ignores the clear intent of the legislature that the courts specifically address the issue of custody for children in the temporary custody of social services. Contrary to the dissent's assertion that our application of the canons of statutory construction is "tantamount to deleting the language" in Code §§ 16.1-241(A) and 16.1-278.15(B) that "[t]he authority of the juvenile court to consider a petition involving the custody of a child *shall not be proscribed or limited* where the child has previously been awarded to the custody of a local board of social services," our construction is an effort to give effect to both subsections. (Emphasis added.)

In fact, when considered in the context of the entire statutory scheme, the two can easily be reconciled. That is, the statute's plain meaning indicates that once a child is placed in the custody of social services, the child's placement with social services does not proscribe or limit the circuit court's ability to *consider* a petition for custody. In other words, the child's placement

- 8 -

A. Custody Standard

A child who is taken into custody pursuant to an emergency removal order, and then placed in the custody of social services, is subject to a foster care plan. Code § 16.1-281; see also Strong v. Hampton Dep't of Soc. Servs., 45 Va. App. 317, 321-22, 610 S.E.2d 873, 875 (2005) ("The statute [Code § 16.1-281] places on the Department the obligation to prepare a foster care plan."). In order for the court to transfer custody to a relative either pursuant to a foster care plan, or a petition for custody, the court must make specific factual findings. Specifically, Code § 16.1-281 requires that,

> [a]ny order transferring custody of the child to a relative other than the child's prior family shall be entered only upon a finding, based upon a preponderance of the evidence, that the relative is one who, after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect; *and the order shall so state.* The court's order transferring custody to a relative should further provide for, as appropriate, any terms or conditions which would promote the child's interest and welfare; ongoing provision of

with social services does not remove the trial court's jurisdiction over issues such as custody. We enunciated a similar holding in Walla.

Essentially the dissent argues that our construction of Code § 16.1-281 proscribes or limits the trial court's authority to consider a custody petition by an interested party for a child who is alleged to be abused and neglected. To the contrary, and as we held in Walla, "the juvenile court judge retain[s] the authority to 'review the status' of [a] minor even after she [i]s placed in the custody of Social Services." Walla, 25 Va. App. at 363, 488 S.E.2d at 657. In fact, "Code § 16.1-281(E) expressly states that children in the custody of Social Services are those the juvenile court judge can review pursuant to that section." Id. "Thus, the scope of the judge's power to oversee the provision of treatment and care to a particular child is not limited to a review of the plan submitted by Social Services," and "[t]he General Assembly clearly intended to provide the juvenile courts, under Code § 16.[1]-281, broad authority to oversee the status of children in the custody of Social Services." Id. at 364, 488 S.E.2d at 657.

Although the dissent would like to distinguish the holding in Walla from that of the present case, the issue of jurisdiction remains the same. Ultimately, in Walla, we held that although the statutes grant social services the power to oversee the treatment and care of a child who is in custody, the trial court still retains jurisdiction to oversee that care. This necessarily includes granting the trial court the authority to entertain the issue of custody, either pursuant to a third party petition for custody, or pursuant to a foster care plan as set forth in Code § 16.1-281.

- 9 -

social services to the child and the child's custodian; and court review of the child's placement.

(Emphasis added.)

Noticeably absent from this statute is any reference to the general custody statute, Code § 20.124.3, [5] regarding the "best interests of the child." In fact, none of the statutes addressing

[5] Code § 20-124.3 states, in pertinent part, the following:

> In determining best interests of a child for purposes of determining custody or visitation arrangements including any *pendente lite* orders pursuant to § 20-103, the court shall consider the following:
>
> 1. The age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs;
>
> 2. The age and physical and mental condition of each parent;
>
> 3. The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual and physical needs of the child;
>
> 4. The needs of the child, giving due consideration to other important relationships of the child, including but not limited to siblings, peers and extended family members;
>
> 5. The role that each parent has played and will play in the future, in the upbringing and care of the child;
>
> 6. The propensity of each parent to actively support the child's contact and relationship with the other parent, including whether a parent has unreasonably denied the other parent access to or visitation with the child;
>
> 7. The relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in and resolve disputes regarding matters affecting the child;
>
> 8. The reasonable preference of the child, if the court deems the child to be of reasonable intelligence, understanding, age and experience to express such a preference;

- 10 -

the foster care plan, the foster care review hearing, or the permanency planning hearing,

incorporate, by reference, the general standard for determining custody.  See Code §§ 16.1-281,

16.1-282, and 16.1-282.1.  Instead, the statutes set forth a more stringent standard the court must

follow in order to transfer the custody of an abused or neglected child to a relative.  Moreover,

rather than specifying that these findings of fact are limited to orders resulting from a foster care

review hearing or a permanency planning hearing, the statute requires that *any* order transferring

custody of a child in foster care to a relative contain specific findings of fact.

The statute requires that specific findings be made prior to the entry of a court order

placing a child with relatives once that child has come into the custody of social services.  See

Code §§ 16.1-281, 16.1-282, 16.1-282.1.[6]  As such, we find that the legislature has spoken in

"specific terms," see Conkling, 45 Va. App. at 522, 612 S.E.2d at 237, thus "limit[ing] the

---

> 9. Any history of family abuse as that term is defined in
> § 16.1-228.  If the court finds such a history, the court may
> disregard the factors in subdivision 6; and

> 10. Such other factors as the court deems necessary and proper to
> the determination.

[6] Even Code § 16.1-278.1 contains similar language to the foster care statutes.  According to Code § 16.1-278.1, once a court enters an order permitting social services to place an abused or neglected child, social services may transfer custody of the child to a relative only upon a finding that,

> the relative or other interested individual is one who, after an
> investigation as directed by the court, (i) is found by the court to be
> willing and qualified to receive and care for the child; (ii) is willing
> to have a positive, continuous relationship with the child; (iii) is
> committed to providing a permanent, suitable home for the child;
> and (iv) is willing and has the ability to protect the child from
> abuse and neglect; and the order shall so state. The court's order
> transferring custody to a relative or other interested individual
> should further provide for, as appropriate, any terms or conditions
> which would promote the child's interest and welfare; ongoing
> provision of social services to the child and the child's custodian;
> and court review of the child's placement.

- 11 -

manner in which" custody of a child, who is subject to a foster care plan, may be transferred to a relative, see Grigg, 224 Va. at 364, 297 S.E.2d at 803. Therefore, the trial court erred in failing to recognize that Code § 16.1-281 applied to the disposition of the petition for custody filed by the Cooks.

We recognize that under the harmless error doctrine, we must affirm the judgment of the trial court if "the error complained of could not have affected the result." See Rhoades v. Painter, 234 Va. 20, 24, 360 S.E.2d 174, 176 (1987). However, in this case, LDSS asserts, and the record reflects, that the trial court failed to make a finding that the Cooks were "willing and ha[d] the ability to protect the child from abuse and neglect," as required by Code § 16.1-281.[7] Because the statute requires the court to make this specific finding, we cannot say that the error is harmless. Therefore, we hold that the trial court erred in failing to make the required findings, as mandated by Code § 16.1-281.

### B. Continuation of the Foster Care Plan

According to Code § 16.1-282, the court "shall" conduct a foster care review hearing for "a child who was the subject of a foster care plan filed with the court pursuant to § 16.1-281." The court must conduct this hearing "if the child . . . is under the legal custody of . . . social services or a child welfare agency and has not had a petition to terminate parental rights granted, filed or ordered to be filed on the child's behalf." Code § 16.1-282. Code § 16.1-282 also mandates that, "[a]fter the hearing required pursuant to subsection C, the court *shall* schedule a permanency planning hearing on the case to be held five months thereafter in accordance with

---

[7] LDSS concedes that the trial court made factual findings that correspond with the remaining required findings listed in Code § 16.1-281.

- 12 -

§ 16.1-282.1 or within thirty days upon the petition of any party entitled to notice in proceedings under this section." (Emphasis added.)

By using the word shall, we hold that the legislature intended for any department of social services to follow specific statutory provisions once a child has been taken into custody because of abuse or neglect. In fact, we have held that "the statute places on the Department the obligation to prepare a foster care plan" and that "[n]othing in the statutory scheme . . . removes the burden on [the Department] to establish compliance with the statutes." Strong, 45 Va. App. at 321-22, 610 S.E.2d at 875.

While acknowledging that the statute contemplates that the child may be placed in the custody of an interested party pursuant to a petition for custody, we hold that the statute merely contemplates that such interested party "steps into the shoes" of a foster care family under the supervision of social services. In other words, although the trial court may grant temporary custody to a relative or other interested party, the statute contemplates that a foster care review hearing, pursuant to Code § 16.1-282, and ultimately a permanency planning hearing, pursuant to Code § 16.1-282.1, will take place. Accordingly, because the statutory scheme requires LDSS to comply with certain provisions, the trial court erred in terminating LDSS's involvement in the case.

## CONCLUSION

For the foregoing reasons, we hold that the custody matter was properly before the trial court. We also hold that the trial court erred in awarding custody pursuant to Code §§ 16.1-278.15 and 20-124.3, and in removing LDSS from the case. Accordingly, we reverse and remand with instructions that this matter be remanded to the Juvenile and Domestic

Relations District Court for the City of Lynchburg for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

McClanahan, J., dissenting.

Upon the Cooks' petition for custody of their granddaughter, the juvenile and domestic relations district court (JDR court) found that transferring custody of the child from the Lynchburg Division of Social Services (DSS) to the Cooks was in the child's best interest. Denying DSS's motion to suspend the transfer, the circuit court ordered the transfer pending DSS's *de novo* appeal of the JDR court's ruling. Noting that disposition of the child's custody had proceeded in JDR court on "two track[s] . . . at the same time," the circuit court ruled that the JDR court clearly had the statutory authority to award custody of the child to the Cooks, separate and apart from the foster care plan. After a two-day evidentiary hearing, the circuit court, like the JDR court, found that awarding the Cooks custody of their granddaughter, and dispensing with the foster care plan, was in the child's best interest. In my opinion, the circuit court ruled correctly and, therefore, I dissent from the majority opinion.

Title 16.1 of the Code sets forth several procedural means of obtaining child custody. Here, DSS initially obtained in the JDR court custody of the Cooks' granddaughter for placement in foster care, pursuant to Code §§ 16.1-281 through -282.1, based on alleged abuse by the child's father. The day after the child was taken from her parents by DSS, the Cooks filed their own petition for custody of the child in JDR court, pursuant to Code §§ 16.1-241, 16.1-278.15 and 20-124.2.

Code § 16.1-241 sets forth the JDR court's subject matter jurisdiction, including, among other things, "[t]he custody, visitation, support, control or disposition of a child . . . [which] is a subject of controversy or requires determination."[8] Code § 16.1-241(A)(3). This statute further provides that "[t]he authority of the juvenile court to consider a petition involving the custody of

---

[8] This is separate and apart from the jurisdiction granted to the JDR court over "[t]he custody, visitation, support, control or disposition of a child . . . [w]ho is alleged to be abused [or] neglected . . . ." Code § 16.1-241(A)(1).

- 15 -

a child *shall not be proscribed or limited* where the child has previously been awarded to the custody of a local board of social services," as in the instant case. Code § 16.1-241(A) (emphasis added).

Code § 16.1-278.15 then provides, in relevant part, that "[i]n cases involving the custody, visitation or support of a child pursuant to subdivision A 3 of Code § 16.1-241, the court may make *any* order of disposition to protect the welfare of the child and family as may be made by the circuit court." Code § 16.1-278.15(A) (emphasis added). Specifically, the JDR court "may award custody upon petition to any party with a legitimate interest therein, including, but not limited to, grandparents . . . ." Code § 16.1-278.15(B). This statute then reiterates verbatim that the JDR court's authority to consider such a petition for child custody "*shall not be proscribed or limited* where the custody of the child has previously been awarded to a local board of social services." Id. (emphasis added). In addition, the court is directed "[i]n any case or proceeding involving the custody or visitation of a child" to "consider the best interest of the child, including the considerations for determining custody and visitation set forth in Chapter 6.1 (§ 20-124.1 et seq.) of Title 20." Code § 16.1-278.15(F).

Code § 20-124.2, in turn, provides, in relevant part: that "[i]n any case in which custody or visitation of minor children is at issue, whether in a circuit court or district court, the court shall provide prompt adjudication, upon due consideration of all the facts, . . . [including] custody and visitation arrangements . . ."; that "[i]n determining custody, the court shall give primary consideration to the best interests of the child," as set forth in Code § 20-124.3; and that "[t]he court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest," including grandparents, as set forth in Code § 20-124.1. Code § 20-124.2(A) and (B).

- 16 -

In filing the petition for custody of their granddaughter under this statutory scheme, the Cooks were not seeking "to merely 'step[] into the shoes' of a foster care parent" under a foster care plan, and were not limited to such status upon their petition. Rather, pursuant to the express terms of these statutes, the Cooks were clearly entitled to bring a direct, independent action seeking a change in the child's custody from DSS to the Cooks, separate and apart from any foster care plan. And both the JDR court and the circuit court, upon *de novo* review, were clearly authorized to adjudicate the Cooks' petition unrestricted by the fact that "custody of the child ha[d] previously been awarded to [DSS]." Code § 16.1-241(A); Code § 16.1-278.15(B).

The majority ascribes a different meaning to these provisions, and makes them subordinate to the foster care plan. Under settled principles, however, "[w]hen statutory language is unambiguous," as with the statutes cited above, "we are bound by the plain meaning of that language. Therefore, when the General Assembly has used words of a definite import, we cannot give those words a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed." Britt Constr., Inc. v. Magazzine Clean, LLC, 271 Va. 58, 62-63, 623 S.E.2d 886, 888 (2006)) (citations omitted). In short, we "'are not permitted to rewrite statutes.'" Boynton v. Kilgore, 271 Va. 220, 230, 623 S.E.2d 922, 927 (2006) (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944)). Contrary to these principles, the majority's holding is "tantamount to deleting the language" in Code §§ 16.1-241(A) and 16.1-278.15(B) granting the court authority to consider the Cooks' petition without limitation relative to DSS's prior custody award. Gunn v. Commonwealth, 272 Va. 580, 587, 637 S.E.2d 324, 327-28 (2006) (rejecting construction of statute that effectively deleted part of the statutory language).

In making the foster care plan statutes subordinate to the statutes under which the Cooks were awarded custody of their granddaughter, the General Assembly did not conflate the two

statutory schemes. The fallacy in the majority's analysis in this regard is highlighted by the fact that the foster care plan statutes specifically address or reference only three types of petitions, none of which pertain to a separate custody petition like that filed by the Cooks. More specifically, Code § 16.1-281, in addressing the requirements of the foster care plan, indicates that, when applicable, a petition for approval of an entrustment agreement shall be filed with the foster care plan; and that, under certain circumstances, the proposed plan may include a petition seeking termination of parental rights. Code § 16.1-282 only addresses a petition for a foster care placement review hearing. Finally, Code § 16.1-282.1 is limited to a petition filed for either a permanency or interim foster care plan hearing.[9]

I also disagree with the majority that the foster care statutes "set forth a more stringent standard" for "transfer[ring] the custody of an abused or neglected child to a relative" than does the best interest of the child standard under the above cited statutes. If a child has been subjected to abuse or neglect, protection from further exposure to the same is clearly a factor to be considered by the court in determining what is in the child's best interest. Under factor number 9 of Code § 20-124.3, the court shall consider "[a]ny history of family abuse." Then more broadly under factor number 10, the court shall consider, on a case-by-case basis, "[s]uch other factors"

---

[9] The majority's reliance on <u>Walla v. Prince William County Dep't of Social Servs.</u>, 25 Va. App. 356, 488 S.E.2d 653 (1997), is also misplaced. <u>Walla</u> does not support the conflation of the two statutory schemes. In <u>Walla</u>, the child was in the department's custody and subject to a foster care plan. On the recommendations of a family assessment and planning team (pursuant to Code § 16.1-254), the JDR court ordered that the child be treated at a therapeutic foster home or a residential treatment facility. <u>Id.</u> at 360, 488 S.E.2d at 655. The department challenged the JDR court's authority to enter the order, arguing that the department had the "final authority" to make such decisions for the child while in its custody. <u>Id.</u> at 361, 488 S.E.2d at 656. Rejecting the department's argument, we ruled that Code § 16.1-281(E) granted the JDR court specific statutory authority to oversee the treatment and care of a child while in the custody of social services. <u>Id.</u> at 363-64, 488 S.E.2d at 657. We did not address in <u>Walla</u>, in any way, the authority of an interested party to file a petition for child custody separate and apart from a foster care plan.

that are "necessary and proper" when determining the custody or visitation arrangements. Code § 20-124.3.

Nor do I agree that the circuit court, in "looking at the best interest of the child under [Code §] 20-124.3," failed to find that the Cooks were "willing and had the ability to protect the child from abuse and neglect." The court made numerous findings pertaining to that issue in its oral ruling, following a two-day evidentiary hearing devoted solely to what custody and visitation arrangements were in the child's best interest. It was the Cooks' son who allegedly abused his daughter, the evidence of which the court concluded was "somewhat suspect."[10] Nevertheless, the court found that the Cooks had been "willing to report their son when he was on restricted visitation and to keep him following the court's orders." The court also found that the Cooks "were above average intelligence," had "stable employment," were "willing to step up and take custody," had "a stable home," had "no emotional or mental problems;" that "the child's doing very well in their home;" and that the court had "every confidence that they'll be able to provide [the child] good support."

For these reasons, I would affirm the decision of the circuit court, and thus dissent from the majority opinion.

---

[10] The circuit court judge explained:

> I'm not sure that the juvenile court, if [it] heard everything I heard in the last two days, will even find there was abuse and neglect. I think there was some question about that . . . . And I think Social Services did right by stepping in and trying to take over a situation they thought might be bad. But I don't think the situation was bad, as it turned out.